## No. 10,712.

### THE BARBER ASPHALT PAVING COMPANY VS. CITY OF NEW ORLEANS ET ALS.

1. The debts for permanent improvements of one year can not legally be left unpaid and the "reserve fund" for that year applied toward paying the improvements made in another year.
   "The revenues of each year shall be devoted to the expenses of that year;" i. e., the creditors for the improvements made during the year shall have preference over the reserve fund for the year.
   The Acts creating a "reserve fund" have fixed a percentage which constitutes the reserve; has provided the purpose for which it shall be expended; but has not repealed Act 30 of 1877 in so far as it applies to annual revenue and expenditure.

2. The 20 per cent. reserve for permanent improvements is made part of the budget by the Statutes, and can be drawn against by special ordinance for permanent improvement during the year, although not made part, in express terms, of the annual budget of expenses.
   Coal used in running the draining machines, and timber in making repairs, not capable of being identified as separate improvements, are not permanent improvements within the intendment of the Statute.

APPEAL from the Civil District Court, Parish of Orleans.
Monroe, J.

Leovy & Blair for Plaintiff and Intervenor, Appellees:

I.

The brief contains an abstract of the pleadings and a full statement of the facts. There is no dispute about the essential facts of the case. They are neither admitted or established by uncontradicted evidence.

II

(a) Exception of no right of action.

1. The requirements of the City charter in respect to an annual estimate or budget

of expenses and revenues does not apply to the reserve fund. State ex rel.
Barber Asphalt Paving Company vs. City, 40 An. 306.

2.  Hence the City is not obliged to state in its annual estimate of expenses the
disposition it proposes to make of the reserve fund, and to specify at the begin-
ning of the year all the permanent public improvements which it proposes to
pay for out of this fund. And the appropriations against this fund made in
plaintiff's favor subsequent to the adoption of the annual budget are valid and
affective.

3.  The allegations in the petition that the City Council is about to use the reserve
fund to pay claims which are illegal and constitute no part of the City's indebt-
edness and also to divert the fund from its legal destination by paying there-
with debts not due for permanent public improvements, and that this legal
waste and diversion of the fund will leave it insufficient to satisfy the claims of
plaintiff, lawfully payable out of it, disclose a right of action in plaintiff to
prosecute this suit.

4.  This suit is analogous to *concursus* of the creditors of an insolvent or of a succes-
sion or to a contest of a junior with a senior mortgage. The right of one claim-
ant to assail another's claim is not affected by the order of time in which the
claims come into existence. Kenedy, Jr. et als. vs. Rust et als., 25 An. 554; Pick-
ergill vs. Brown, 7 An. 306.

5.  The intervenor, who is a citizen and tax-payer, and has come into court to join
the attack of the plaintiff upon the defendant, has a clear right, under the
charges made by him, to contest the validity of the municipal ordinances, and
contracts executed thereunder concerned in this suit. Handy et als., vs. City
et als., 39 An. 107; Conery et als., vs. City, *Id.* 770.

(b) The case against C. J. Fayssoux and the Rosetta Gravel Paving and Improve-
ment Company.

1.  Municipal corporations have such powers as the general laws or their charters
expressly confer upon them, or such as are necessary to exercise the powers
expressly conferred, and none other. Any fair reasonable doubt concerning
the existence of power is to be resolved by the court against the corporation
and the power denied. 1 Dillon Mun. Corp., (3 Ed.) Sec. 89, p. 15, Sec. 16, p 23,
p. 118.

2.  When the law prescribes the mode in which a certain kind of contract is to be
made, that the contract must be made in accordance with the prescribed mode
and its attendant formalities; otherwise it is invalid. The mode is the measure
of the power. *Id.* Sec. 449, p. 443.

3.  A municipal corporation necessarily acts through its agents. The City Council
is not the City, but simply one of its agents. When these agents act beyond
the scope of their authority or the powers of the corporation, they cease to re-
present the City, and their acts and contracts do not bind it and confer no rights
upon those who contracted with them. *Id.* Sec. 21, p. 28; Sec. 457, p. 450.

4.  Those who contract with the agents of a municipal corporation are presumed
to know, are bound at their peril to know, the limitation upon the powers of
such agents and of the corporation. They can not be heard to complain when
*ultra vires* contracts are annulled and they lose the value of labor done or mate-
rials furnished under such invalid contracts. The are *participes criminis* of the
corporate agents with whom they have joined in making illegal or *ultra vires*
contracts. *Id.* Sec. 447, p. 441.

A municipal corporation can not be estopped by any ratification or confirma-
tion made by its agents in respect to their *ultra vires* acts or contracts. *Id.* Sec.

30

504, p. 486; Newberry vs. Fox, 33 Northwestern Reporter, pp. 333, 334; Marsh vs. Fulton, 10 Wall., pp. 683, 684.

6. The foregoing elementary principles of the law of municipal corporations are announced also in the following cases: Thomas vs. Richmond, 12 Wall., pp. 354, 356; Fox vs. Sloo, 10 An. 11; Burchfield vs. City, 42 An. —; Succession of Chaurand, 36 An. 547; McDonald vs. Mayor, 68 N. Y. 23 (23 Amer. Rep. 144).

(a) The Fayssoux claim.

1. This claim is not due by the City in virtue of any express contract obligation. It is admitted that the portion which the City bound itself to pay in the only contract entered into has been paid. The contract expressly exempts it from liability for the portion now claimed.

2. It is not due in virtue of any responsibility on the City's part for the contractor's failure to collect from the property owners, or by reason of any warranty express or implied. Moylan vs. City, 32 An 673; Daly vs. City and County of San Francisco, 13 Pac. Rep. 322; Sexton vs. City of Joseph, 60 Mo. 153; McDonald vs. Mayor, 68 N. Y. 23 (23 Am. Rep. 144).

3. The cases of Cole vs. City of Shreveport, 41 An, 839. and of Hitchcock vs. Galveston, 96 U. S. 341, discussed and differentiated. There was an absolute want of power on the part of the City Council to impose upon the City at large any greater portion of the cost of paving one of its streets that the cost of paving the intersections.

4. An additional reason for not holding the City responsible for the property owner's portion on the presumption of benefits received is, that the paving laws repel the presumption that a greater benefit that the cost of paving intersections is received by the City at large. Paving laws discussed.

5. The absence of any liability on the part of the City for the claim which the City Council seeks to pay at the expense of lawful creditors *res judicata.* Fayssoux vs. City of New Orleans, a suit decided by the Civil District Court, the record of which is in the transcript.

6. The sole source and cause of the City's allege obligation to Fayssoux is an ordinance of appropriation passed in his favor by the City Council. Inability of the City Council to thus create an indebtedness pointed out. Repugnancy of the ordinance to Article 45 of the Constitution shown.

7. Effect of Fayssoux's rights, if any, to remove the unpaid for portion of the pavements discussed.

(b) The claim of the Rosetta Gravel Paving and Improving Company.

1. This claim arose under a contract disguised as a contract for repairing, but really one for the paving or rather re-paving of a paved street, entered into by the City Council on its own motion, without prior public notice and without any petition of property owners, and imposing the entire cost of the paving upon the City at large.

2. The powers of the City Council under the present and past charters of the City discussed with a view to showing the want of power to make a contract such as was made with this claimant.

3. The contract under which the Rosetta Company claims is also null and void because made in violation of Section 21 of the City charter, Act 20 of 1882.

(c) Claims under the appropriation of $25,200 "for material for public improvements."

1. The City Council is prohibited by law from using the reserve fund for any other purpose than to pay for work of permanent public improvement.

2. The nature and origin of the claims of Adams and, the Milner Coal Company discussed and shown not to be due for permanent public improvements.

(d) Amendment in the judgment of the lower court prayed by for plaintiff and intervenor.

1. The Court erred in striking the item of $8279.59 from the list of claims payable out of the reserve fund of 1887.

2. If not entitled to be restored to the place assigned it by the City Council, this item is certainly entitled to be paid out of the fund after all claims legally payable therewith have been satisfied.

---

· *Carleton Hunt*, City Attorney, for Defendant and Appellant:

The City Comptroller is bound to audit, and the City Treasurer to draw, for claims of creditors against the City, just as the same have been budgeted, and appropriated for by the City Council.

Section 66 of Act 20 of 1882, as amended and reëacted by Act 109 of 1886, reserving, as it does, 20 per cent. of the revenues of the City, for purposes of permanent public improvement, interferes in no manner with the legislative discretion which the Council necessarily exercises in making appropriations under the Act.

This court will look with favor upon the construction put by the Council on its own rights and duties, and has declared its indisposition to interfere therewith. 32 An. 82; 33 An. 478; 42 An. 608.

---

*Buck, Dinkelspiel & Hart*, for Fayssoux, Defendant and Appellant:

1. The stipulation in a paving contract entered into with the City contemplating payment by front proprietors, that " the City be not held liable or responsible for any of said bills should same not be paid" means nothing more than that the City is not a surety or warrantor of their solvency or of the sufficiency of the property to pay for the paving.

2. The City making the contract with a view to compel unwilling property holders does so under and by means of her legislative sovereign power to levy taxes and impose assessments. She warrants her power and the validity of her assessment or legislation, and when the assessment can not be collected by reason of legal defect or informalities, which strike it with nullity, the contractor has a claim against the City; if not on the terms and letter of the contract, at least on a *quantum meruit.* Burchfield vs. City, Condran vs. City (No. 10,719), not yet reported.

3. And this liability exists in the face of a stipulation that the corporation shall not be liable if the mode of payment in the contract provided fails. Cole vs. Shreveport, 41 An. 836; 5 An. 537; Semel vs. Gould et al., 12 An. 225. and authorities cited in brief.

4. Whatever may have been the status or liability of the City of New Orleans, under such a contract, originally to the contractor, whose contract, by judicial interpretation, gave him no claims against front proprietors, a judgment of a court of competent jurisdiction rendered in a cause between the contractor and the City on an issue seeking to hold the City on *quantum meruit*, rejecting plaintiff's, the contractor's demand, but reserving his right as against the City to take up the pavement (the material, square blocks), unappealed from, and apparently acquiesced in, is sufficient consideration to sustain an appropriation of money to pay for the pavement and so retain it.

5. A proper motive and consideration appearing, the court will not usurp legislative functions to inquire into the sufficiency of the consideration, or the policy of the motive on which the City Council acted; though to enforce its own conclusions, it takes notice of the facts in the record, that this paving was upon important public thoroughfares; necessary to make easy approach for heavy vehicles to the levee; that the streets were in bad condition before the paving was done; that in the course of a few years the City had expended, to keep them merely temporarily in repair, as much or more than the cost of this paving, and that the contract price is about the actual and usual value of such paving.

6. The power on the part of the City Council to acquire and purchase such pavement in this manner is clearly deducible both from the general power on control and duty to maintain streets in order, and from special power to order paving of streets, at the expense of the whole City (Charter, Sec. 27, Act 20, 1882), as well as from the unlimited power to contract for works of public improvement and pay for same "out of reserve fund," or such other special funds as as may be at the City's disposal.

7. That portion of the city revenues constituting what is known as the "Reserve Fund," is not subject to the restrictions imposed on the City in regard to current revenues for annual alimony. It is a continuous perpetual fund, and the only condition attaching to its use or appropriation is that it shall be appropriated for works of public improvement. 40 An., p. 360.

8. The paving or repaving of a street with square block pavement is a work of permanent public improvement, in the sense of the statutes under consideration.

9. An ordinance of the City Council directing payment for such work out of "Reserve Fund," of a future year, is valid and can not be set aside to the prejudice of a beneficiary for the benefit of rights or claims accruing subsequent to his.

A "budget appropriation" of any part of this reserve fund, of any year, is a sufficient setting aside thereof, especially when sufficient in amount, object and person, to compel the comptroller to hold said amount for the payee designated in the budget. The right thus fixed by the budget can not be impaired by mere so-called "financial ordinances" authorizing actual payment to be made by the comptroller, under and against other appropriations of part of said fund. Where a specific appropriation, for a certain amount, purpose, etc., and to a person named, is made in the budget of appropriations, the amount can legally and properly be paid by the comptroller as soon as the money contemplated comes into his hands, without further special order or so-called "financial ordinance." In any event, it can not be diverted to other uses, causes, or persons.

---

*Chas. Louque* for Milner Coal and Railroad Company, Defendant and Appellant:

The Barber Asphalt Company can not be paid out of the reserve fund of 1887 for work done in 1886 and 1883.

For their work done in 1887 there is no appropriation to meet their claim, and the comptroller is forbidden to pay without an appropriation, which can only be made in the budget.

Fayssoux bound himself by contract to make no claim against the City. He should not be paid: Because the Constitution prohibits the City from paying extra compensation to a contractor.

Paving Co. vs. City et als.

Because the City can not pay a claim arising from a contract made without express authority of law; the Supreme Court so declared.  36 An. 547.

Because his contract was entered into in 1882.

Lumber is as permanent as asphalt, and when used to repair or construct bridges it is used for works of permanent public improvement; the repairs make the work permanent.

The burning of coal is the only means of rendering the drainage permanent.  This is a work of great public improvement.

The Council has the right to appropriate the reserve fund for work of public improvements.  If Adams and Milner are not to be paid out of the appropriation of $25,200, it does not revert to the Barber Asphalt Company.

The reserve fund should be appropriated in the budget, in the same manner as the alimony.

---

The opinion of the court was delivered by

BREAUX, J.  This is a suit to recover an amount from the City of New Orleans, for paving the intersections of certain streets, and one-fourth of the cost of paving in front of private property.

We abbreviate the pleadings as follows:

Plaintiff claims for cost of paving completed April 30, 1886, the City's portion, amounting to $7665.83, and that completed June 29, 1886, $603.86.

The City Council appropriated $8279.59 to its payment out of the reserve fund for 1887.

For cost of paving completed in 1887 plaintiff claims $36,173.58. Part was completed in May of that year, and part in June.  This sum was ordered to be paid out of the reserve fund for 1887.

The legality of the contract is alleged, and the performance of the work as stipulated.

Act No. 109 of 1886, amendatory of the City Charter of 1882, and Act 88 of 1884, requiring the City to set aside 20 per cent. of her revenue and of allotments received from contingent sources, to pay for permanent improvements, are pleaded, and plaintiff represents that this fund is about to be illegally disposed of, in great part, to its prejudice.  That the comptroller is about to warrant for payment to be made, in the order of claims, as set down in the budget.  That this reserve fund will prove insufficient to pay all the claims on the list, and petitioner contests those which the comptroller proposes to pay before its own.  He prayed for an injunction enjoining any payment out of the revenue fund of 1887, to C. J. Fayssoux and other defendants named.

The City and the Comptroller plead to carry out the budget as adopted.

The defendant C. J. Fayssoux, and J. W. Adams, another defendant, filed exceptions of no cause of action.

The former, in his answer, denied the allegations of plaintiff, especially those as to illegality of the apportionment, in his favor, and claimed to be paid out of the " reserve fund" for 1887. The latter alleged that plaintiff had no right to any part of that fund. The other answers are substantially the same, except that in one estoppel is pleaded on the ground that, plaintiff's claim, not having been budgetted at the time the annual budget was adopted, but afterward, by special ordinance, it was without right to recover.

J. Tupper, alleging that he is a creditor, and that he owns taxable property in New Orleans and pays taxes thereon, intervened and opposed the claims other than plaintiff's.

＊          ＊          ＊          ＊          ＊          ＊          ＊          ＊

### FACTS IN THE CASE.

A few facts, general and applying to all claims, will be stated at this time. The statement of the others will be made in considering the respective claims.

It is conceded by all parties that the reserve fund of 1887 is insufficient to satisfy all claims appropriated against.

None of the claims are for permanent improvements made in 1887, except part of that of plaintiff, amounting to $36,173.58, and the claims of J. W. Adams and that of the Milner Coal and Railroad Company.

The two last are opposed as not being for permanent improvements.

Before considering the claims separately, certain questions of law will be discussed.

1. Whether debts for permanent improvements of one year can be left unpaid and the reserve fund of that year applied to the improvements made in another year?

It is contended by most of the creditors whose claims are carried on the budget, that the reserve fund is unconditionally placed at the disposal of the City Council, to pay for permanent improvements without regard to the year in which a particular work or improvement may be contracted for.

That the "reserve fund" provision would be without force if the

Council is bound to apply each year's reserve to work to be done in that year.

The object of the legislature to eradicate the evil of appropriations and expenditures in excess of actual resource; an evil sorely felt during a number of years of extravagance and waste will not be advanced by construing away the law limiting revenues to the payment of the expenditure to the year for which they are collected.

Act 50 of 1877 reads: "That the revenues of each year shall be devoted to the expenses of that year" (*i. e.* the creditors have preference over the fund).

The reserve fund is part of the revenue.

If a repeal has been effected in so far as relates to that fund, why is the act not repealed in so far as relates to the alimony of the city? One is for permanent improvements, the other for the operative expenses of the city. All revenues and all expenses include the 20 per cent. and the 80 per cent. The statutes have not established any difference in this respect.

If the "reserve fund law had not been adopted, part of the fund would doubtless be expended in making improvements of a permanent character; in paying for them the limitation Act of 1877 would be enforced.

The Acts creating a "reserve fund" have only fixed the percentage to be taken from the revenues.

If the Legislature had ordered a fund reserved of 5 per cent. for any purpose of alimony, this would not have effected a repeal of the limitation to that extent. Why should it be different when claims are presented for permanent improvement.

The first law provides a limit; annual stops and rests, as it were, settlements.

The second provides a reserve fund.

There is no conflict, both can be enforced.

There is no repeal by implication.

The argument *ab inconvenienti* does not recommend itself to special favor.

If there be inconveniences or annoying hindrances to its enforcement, we sincerely hope that it will attract the attention of the members of the Legislature, who alone are competent to abolish it.

  *   *   *  *   *   *   *   *

Another question is suggested.

.2. Must the particular improvement be designated and provided for in the annual budget? Act 109 of 1886, and the provision of the charter, Sections 64 and 65, obviously make the 20 per cent. "reserve" part of the annual budget in effect at least. The reserve is excluded from the rule which prescribes, from year to year, that a budget of revenues and expenses be adopted.

This expenditure is provided for by the Statute; the amount and the purposes to which it shall be applied, whether expressed or not in the budget, is made a part of the budget by Statute.

*The claim of the plaintiff, the Barber Asphalt Paving Company.*

This claim has been proven. $8279.69 of the amount are due for improvements in another year and are not collectible out of the funds of 1887. The remainder of the work was performed as alleged and the amount is due from the "reserve fund" for that year.

Objection is made by the City to the payment of legal interest out of this fund.

It has been twice decided by a unanimous court in suits against the City that in the absence of any stipulation, no interest shall be allowed prior to amicable demand and prior to funds being in the treasury of the City for its payment. Fernandez vs. New Orleans 42 An. 1; Fire Engine Co. vs. City, 39 An. 981.

It only remains for us to apply the principle held settled by jurisprudence. The right to recover legal interest dates from the time the City has the needful amount to pay, and defaults in payment.

*The claim of C. J. Fayssoux.*

This claim dates from 1882.

The contract for paving streets named was made in conformity with Act 73 of 1876, and it stipulates that the cost of the pavement shall be paid by the City in part and the balance by the owner of the property fronting on the street, and that the City shall not be held liable or responsible for the failure of the contractor to collect from the front proprietor.

The City paid its portion, some of the tax-payers resisted payment, suits were brought. One of these suits was brought here on appeal. Fayssoux vs. Succession of Chaurand, 36 An. 547.

The plaintiff then brought suit against the City of New Orleans,

and claimed from the City amounts he had failed to recover from the property owners.

The City answered that it was in express terms stipulated in the contract that on failure to collect from the front proprietors the City was not to be held responsible.

The City also plead prescription.

Judgment was rendered on July 3, 1885, in favor of the City, rejecting plaintiff's demand reserving, however, to plaintiff the right to take up and repossess himself of the material used in proportion to the whole amount of the paving done by him.

There was absence of appeal.

The City Council, in November of that year, passed an ordinance appropriating from the "reserve fund " of 1883, for its payment. It not having been paid from that fund it was budgetted to be paid out of the " reserve" of 1887.

No part of the improvement was made that year, and therefore the claim has no preference over its revenues.

The plaintiff applies to have the judgment appealed from amended in so far as it fails to decree that this claim is illegal and constitutes no part of the valid indebtedness of New Orleans.

The question relates to the authority *vel non* of the City Council to assume the payment of this claim.

The Council passed ordinances to assume the debt.

We have granted to plaintiff all it prayed for by excluding this claim from any preference over the " reserve " for 1887.

The judge *a quo* without assigning the reason did not decide the question of the validity or invalidity of the assumpsit. He doubtless deemed it unnecessary. In this view we agree with him.

*The claim of the Rosetta Gravel Paving and Improvement Company.*

This company is not represented by counsel in this suit and no demand is urged in its behalf.

There was a contract entered into between the city and this company in September, 1887.

By mutual consent it was annulled, and another entered into in July, 1888.

The work was performed in 1888 under the last contract.

The company abandoned expressly all claims under the annulled contract.

The consideration for the work under the contract of 1888 was

$30,000, payable out of the fund for the year 1887, and $15,000 out of the suspense account for 1885. The reserve for 1887, presents the only question involved in this case. The records disclose that the prerequisites were complied with prior to the contract.

The claim has no preference on the revenues of 1887.

*The Milner Coal and Railroad Company and the J. W. Adams' Claims.*

The claim of the former is for coal furnished during the year 1887, and of the latter for lumber furnished during the same year.

The coal was used for operating the drainage machines, and the lumber for general repairs.

The reserve fund is to be used in paying for permanent public improvements. Coal used in creating steam has none of the elements of permanence. The same is true of lumber used in making general repairs.

The boards used in repairing an old house, the sleepers and other timbers laid down in a bridge to replace decayed ones, are not permanent improvements.

An improvement is not permanent unless it is durable, distinct, and susceptible of identification. One generation builds and leaves them to future generations.

In this case the improvements are not susceptible of identification. At any rate, no proof was offered to identify them.

Plaintiff prays to be paid out of the "reserve fund" of 1887, and that the city be enjoined from paying its co-defendants from the reserve fund of that year.

The prayer of the petition determines the character of the action.

The intervenor joins the plaintiff in enjoining the payments of any of the claims of these defendants. The prayer is granted except as to interest in the sum of $8279.59, except, also, as to the interest on the balance, viz: on $36,173.58, allowed from date of maturity of indebtedness by the decree of the court *a qua*, but which should be allowed only from judicial demand.

The judgment appealed from is amended by rejecting the demand for interest from the reserve fund of 1887 prior to judicial demand; and we now allow interest only from judicial demand, and that appellees pay costs of appeal in proportion to their respective claims.

As amended, judgment affirmed.

Rehearing refused.