*887 The opinion of the court was delivered by
Miller, J.
The plaintiff appeals from the judgment dismissing his suit to recover on certificates of appropriation issued by the city for wages of laborers, and on claims alleged to have been acquired by plaintiff against the city.
The defences are that the plaintiff has not proved ownership of the certificates or claims; that if that proof is deemed administered the claims and certificates are payable only out of the revenues of the year in which the claims accrued, or for which the certificates issued, and, finally, that there are no funds from which the plaintiff can demand payment.
In previous decisions we have maintained that, in order to acquire rights against the city for amounts due for wages of laborers, or to otherparbies specified in the ordinances or carried on the pay rolls, the receipt of the original creditor for the certificate or his signature to the transfer of his claim must be furnished to the city. This is a rule of protection to the city, and is, in terms, exacted by the ordinance under which the certificates sued on were issued. Neugass vs. City of New Orleans, 42 An. 164; Wadsworth vs. City, 46 An. 445; Neugass vs. City, 43 An. 78. In this respect we do not perceive that this record is materially different from that before us on the plaintiff’s previous appeal. The plaintiff has produced testimony that the claims mainly, if not all for laborers’ wages, were acquired from them by plaintiff’s transferee, but as we appreciate the testimony, none of these laborers have placed their names on transfers on the books of the city or on transfers on file in the proper department of the city government. Nor is the case different in respect to the certificates. We gather from the record that the orders or transfers from the primary creditor of the city were brought to a broker, who furnished money on the faith of their orders, and who obtained the certificates, with no acquittance or receipt to the city from the original creditor or without even leaving on file with the comptroller or other officer the order or transfer of the creditor. This method of business, if recognized, would, in our view, expose the city to loss and be a departure from the mode implied, if not expressed, by the charter, and our decisions. But on this issue of ownership, we think it proper to reserve plaintiff’s rights. We do this the more readily, because, in our view, he has no right to present payment, *888 and on another trial he may supply the testimony deemed essential on the issue of ownership. Here we might close the opinion, but to guard .against the renewal of useless litigation, we think it proper to again express our views as to the right of action of creditors of the city claiming payment from budget appropriations.
The petition not only asserts the right of payment out of the revenues of 1882, but claims an absolute judgment for the amount of the claims and certificates. We think our jurisprudence, based on express legislation, is that claims of the character, whatever their form, are restricted for payment to the revenues of the year in which the claims accrued or certificates were issued. Act 1877, Extra Session, No. 30; City Charter, Act No. 20 of 1882, Sec. 66; No. 88 of 1884; 109 of 1886; Barber Co. vs. City, 43 An. 464.
' Another contention of plaintiff is, that as his claims are based on the appropriations in the amended budget of the city, of 1882, he is entitled to payment from the revenues placed on that budget, of which he claims there is a sufficiency to pay him. It appears that the city has on hand of these revenues of 1882, six thousand five hundred dollars, but thirty-four thousand dollars of the items on the original budget of that year are unpaid. The revenues on the amended budget were the anticipated excess of the appropriations on the original budget, and estimated income of the year from other sources. The plaintiff’s theory is: two budgets and two classes of creditors of the same year, corresponding with the budgets. If this classification of separate creditors and separate budgets is to be introduced, it would, in our view, be in marked contrast with the simplicity and economy proposed to be,secured in the financial administration by our law in providing for one annual budget with suitable provision, not to be exceeded for all creditors of the city entitled to payment from the budget appropriations. (Authorities cited above.) The contests in the courts of transferees of claims against the city and holders of city certificates competing for payment from budgeted appropriations, under laws designed to secure economy and an orderly administration of the city finances, have imposed huge expenses wholly extraneous to the legitimate purposes of municipal government. The litigation of the city would in our view, be largely increased by the classification of creditors and of assets for their payment, we are asked to recognize in this case. We can find no warrant in our law to give parties claiming to be paid from appropriations on the amended *889 ■budget, any exclusive or special rights on the revenues placed on that budget. Our predecessors held that amended budgets were permissible, but that the items on the original budget were to be first paid, and hence the payment of any appropriation on the amended budget was enjoined until payment of the expenditure provided for on the original budget. That obstacle to plaintiff confronts him. In that case the injunction sought was by parties holding claims under the original'budget to restrain payment to those whose rights were based on the amended budget. The case necessarily involved the question presented here, in respect to the application of the supposed surplus of the appropriations. The principle of the decision extends as well, we think, to sources of income not brought on the original budget. The budget, as first framed, was entitled to be first paid, is the leading idea of the decision; and all the annual revenues are pledged for the purpose. Shotwell vs. The City, 36 An. 938, and especially top paragraph on page 940. The decision, it is said, is not binding, except as between the parties. To give effect to plaintiff’s pretensions would be to disturb that effect. Irrespective of that, we adopt the principle there laid down. The Shotwell decree was in the interest of private parties. In the public interest requiring one budget and forbidding an amended budget conferring special rights on those claiming under it, in our opinion, the pretensions of the plaintiff must be rejected.
We have held and again hold that parties like plaintiff have no action against the city unless there are funds to the credit of the appropriations out of which they are entitled to be paid. The record shows no such fund. 46 An. 345 and cases there cited.
We gather from the record that the revenues claimed to be exclusively applicable to the items on the amended budget, as well as those on the original budget, have been applied to no other purpose than as directed in the Shotwell decision; that is, to the appropriations on the first budget. This answers, we think, the contentions that the city is liable because of an alleged diversion of funds. The argument for plaintiff, in this respect, simply is another form of assertion of exclusive rights on the revenues brought on the amended budget.
It is therefore ordered, adjudged and decreed that the judgment of the lower court be annulled and reversed, and that there be judgment now rendered against plaintiff as in case of non suit — costs to< be paid by him.