Statement of the Case.
MONROE, C. J.
Plaintiffs, as citizens and taxpayers of Morehouse parish, applied for a writ of injunction restraining the police jury from carrying into effect certain ordinances, adopted in October, 1913, which provide for the erection of a courthouse, and appropriate $4,500 in part payment of the compensation of the architects for drawing the plans and specifications and supervising the construction of the same; The district court, after hearing, declined to issue the writ, and plaintiffs have appealed.
Police Jury Ordinance No. 88 of October 9, 1913, declares the necessity for a new courthouse, and the declaration is abundantly sustained by the evidence. The ordinance further sets apart and irrevocably dedicates, for the purpose of building and furnishing such court house, “2% mills, of the 10-mill tax, levied for parochial purposes, under the Constitution and law, * * * ' for the years 1914 to 1923, both inclusive,” and provides that the tax so dedicated shall be budgeted for said purpose in the annual budgets for said years, and, when collected, shall be kept as a separate fund therefor. Ordinance No. 89, of the same date, provides that Stevens & Nelson Company are employed as architects; fixes their compensation, appropriates $4,500 out of the proceeds of said dedicated tax in part payment thereof, and limits the cost of the building to $85,000, etc.
*448 The grounds upon which plaintiffs rely (considering them in somewhat different order from that observed in the brief of their learned counsel) may be stated as follows:
(1) That the statutory limitation of parochial taxation for all purposes (special taxes and local assessments excepted) is 8 mills, and that the scheme proposed by defendants requires a tax of 10 mills.
(2) That a “proper” support of the public schools of the parish requires a tax exceeding that which the proposed scheme contemplates,. and that such proper support is to be regarded as a necessary or statutory charge which should take precedence of the proposed tax for the building of the courthouse.
(3) That the law provides that:
“No dedication of future revenues shall be made which, alone, or together with other prior dedications, shall exceed the estimated excess of revenues over the statutory, necessary and usual charges of the year in which the agreement or contract is made.”
Opinion.
[1 ] 1. The first proposition was considered in the matter of Murphy v. Police Jury, 118 La. 415, 42 South. 979, and it was there held that act No. 64 of 1906, limiting the rate of parochial taxation to 8 mills applied, not to taxes levied “for all purposes whatsoever,” but to taxes levied for “ordinary parochial expenses” (should be “purposes”); and that:
“A police jury may levy a tax of 8 mills, exclusive of the tax levied for school purposes, provided the whole parish tax, including that levied for school purposes, does not exceed the constitutional limit of 10 mills.”
Counsel argue that the point was erroneously decided, but we are not convinced of the error. Article 232 of the Constitution declares that:
“No parish * * * tax for all purposes whatsoever, shall exceed in any one year ten mills on the dollar.”
Act No. 115, subd. 8, of 1898 confers upon the police juries the power “to levy such taxes as they may judge necessary to defray the expenses of their respective parishes” (meaning, of course, within the limit of 10 mills, fixed by the Constitution).
Article 254 of the Constitution declares that:
“The Legislature * * * shall provide that every parish may levy a tax for the public schools therein which shall not exceed the entire state tax [which is 6 mills], provided, that with such a tax the whole amount of parish taxes shall not exceed the limit of parish taxation fixed by this Constitution.”
The question of the proportion of the taxes thus authorized which should be devoted to the support of the schools was, however, made the subject of special legislation, both constitutional and statutory, and such taxes were thereby distinguished from those to be levied “for ordinary parochial purposes.”
Act 214 of 1902, § 63, required the police juries to levy a tax of 1% mills for the support of the schools, and authorised them, in the language of article 254 of the Constitution, to levy a tax of 6 mills for that object, with the proviso that the whole parish tax “shall not exceed the limit of 10 mills * * * fixed by the Constitution.” ■
Act No. 64 of 1906 declared that:
“No tax for ordinary parochial purposes shall be levied * * in excess of 8 mills. * * ”
On the other hand, the Constitution contemplates and provides for the maintenance of parishes as political subdivisions of the state, charged with important governmental functions, and declares that they shall be dissolved, or merged into each other, or that their lines shall be changed, or their seats or capitals, moved, only with the consent of a majority of their qualified electors, expressed at a special election; and, while it declares that “the General Assembly may establish and organize new parishes, which shall be bodies corporate, with such powers as may be prescribed by law,” the power to create a new parish can be exercised only by changing the boundaries of existing parishes, and hence only with the consent of the elec *450 tors; so that the existence and autonomy of the parishes, as now created, are beyond the control of the Legislature, and it will hardly be contended that the Legislature could either deprive them of the powers of local government for the exercise of which they were created or of the means whereby to exercise those powers. The situation which was presented when the Murphy Case was decided was therefore as follows: The police juries were vested by the Constitution with the power to levy school taxes to the extent of 6 mills, provided such taxes, with all other parish taxes, did not exceed 10 mills, and the General Assembly could not deprive them' of that power, or so legislate as to interfere with its free and full exercise, at the discretion of those in whom it was thus vested. The Constitution also limited parochial taxation, “for all purposes whatsoever,” to 10 mills ; hence it follows that it was only with reference to parochial taxation to the extent of the remaining 4 mills (within the limit thus fixed) that there could, even theoretically, be any legislation at all, and practically there could be none, since no parish in the state could discharge the functions contemplated by the Constitution upon less than a 4-mill tax, and the idea that the Legislature could either destroy the local communities contemplated and provided for by the Constitution, or deprive them of the capacity to discharge their functions, could not, for a moment, be entertained.
It was therefore held in the Murphy Case that it was not the intention of the Legislature, in declaring, in Act No. 64 of 1906, “that no tax for ordinary parochial purposes shall be levied * * * in excess of 8 mills,” to impinge upon the power of the parishes to levy the 6-mill tax for their schools, and that, inasmuch as the limitation of 8 mills, if construed to include the school tax, would leave but 2 mills for the alimpny of the parishes— an amount wholly insufficient — that'limitation was intended to be applied only, as the act itself declared, to the taxes to be levied “for ordinary parochial purposes”; and it might have been added that the limitation could be effective only so long as the 8-mill tax and the school tax (which the police juries were at liberty at any time to increase to 6 mills), should not together exceed the constitutional limitation of 10 mills “for all purposes whatsoever.”
The Legislature seems to have approved the view thus taken of the matter, by its Act No. 27 of 1908 amending and re-enacting section 63 of Act No. 214 of 1902, which act (of 1908) reads, in part:
“That section 63 of Act 214, * * * approved July 10th, 1902, be amended and re-enacted to read as follows; viz.: Section 63. * * * That the police jurors * * * shall levy for the support of the public school of their respective parishes a tax * * * which shall not exceed the entire state tax, provided, that with this tax the whole amount of the parish taxes shall not exceed the limit of parish taxation fixed by the constitution; and provided also, that no police jury * * * shall levy for the support of its schools less than 3 mills on the dollar of the assessed valuation of the property _ thereof, unless the parish board of school directors * * * certifies that the needs of the schools can be met by a smaller levy,” etc.
The limitation of parochial taxation thus recognized is totidem verbis that (of 10 mills) “fixed by the Constitution, and not the 8-mill tax provided for by Act No. 64 of 1906. In fact, it is evident that, as the act of 1908 requires a school tax of 3 mills, it necessarily reduces the limitation of parochial taxation (“for ordinary purposes”) to 7 mills, since such taxation, “for all purposes whatsoever” (otherwise than as specially ’authorized), must he kept within the constitutional limit. Counsel for plaintiffs argue that section 63 of Act No. 214 of 1902 was repealed (by implication, or necessary conflict) by Act No. 64 of 1906, and hence that Act No. 27 of 1908, purporting to amend the repealed section, had nothing to operate on, and is therefore void. . We do not concur in that view, but *452 find it unnecessary to consider it, for the reason that the substance of the act of 1908, and almost the language, has been incorporated in the Constitution itself as an amendment, iaroposed by Joint Resolution No. 257 of 1910, and adopted in November of that year. A similar recognition of the limitation of 10, rather than of 8, mills upon the power to levy parochial taxes is also to be found in the amendment to article 281 of the Constitution, proposed by Joint Resolution No. 132 of 1912, p. 166, and adopted in November of that year, which reads (in part):
“Paragraph 4. The police juries, * * * for the purpose of constructing highways and nublic buildings, * * * after making provision for the payment of all statutory and ordinary charges, may -fund into bonds * * * the avails of the residue of the ten (10) mill tax authorized by article 232 of the Constitution,” etc.
If, therefore, there were no 10-mill tax authorized before the adoption of the amendment thus quoted, it would have to be authorized by the amendment, since there can be no “residue,” or “avails of the residue,” of a tax that is unauthorized; and, moreover, whether correctly or incorrectly, the amendment declares that the 10-mill tax is authorized.
The contention that the statutory limitation of parochial taxation is 8 mills is therefore not sustained. The Legislature cannot, upon the one hand, deprive the police juries of their constitutional right to levy taxes for the support of the public schools to the limit of 6 mills, nor can it, upon the other hand, deprive a parish of its autonomy as a political corporation established under the Constitution, or of its capacity to discharge its functions as such, by withdrawing from it such power of taxation, authorized by the Constitution, as may be necessary thereto.
[2,3] 2. Plaintiff’s second proposition is equally without support. The Constitution, as amended, agreeably to Joint Resolution No. 257 of 1910, p. 437, declares that the police juries shall devote the proceeds of “at least three mills of the annual tax which they are empowered to levy” to the support of the public schools, and, under other provisions of law, constitutional and statutory, they cannot devote more than 6 mills of such annual tax to that object. They may, however, levy special taxes, in addition to the annual tax, upon being specially authorized. But whether they shall devote more than 3 mills of the annual tax to the schools is left to their discretion, subject to the condition that they are bound to provide for the expense necessary to the discharge of the functions of their parishes as political corporations ; and whether the special taxes shall be levied depends upon those who have the right to vote upon that question.
The learned counsel for plaintiffs say, in their brief:
“The total expenses [of the parish of More-house], fairly calculated, for the year ending December 31, 1913, exceeded by many thousands of dollars the total estimated revenues for that year. There is no question as to the correctness of this assertion.”
The learned counsel for defendants say, in their brief:
“We shall not attempt to analyze the figures disclosed by the testimony upon this point [i. e., the point stated in above excerpt from the brief of opposing counsel], but refer the court to the summary thereof made by the judge of the district court. He found, after a careful analysis, that there would be a surplus in the year 1913 of $8,275.18, and his final analysis of the financial condition of the parish of Morehouse, for the year 1914 is as follows:
“ ‘The 7 mills, after deducting the 3 mills for the schools, will, upon an assessment no greater than that of 1913, produce $26,845 (to which the surplus of 1913 should be added — about $8,000), and will give the parish some $34,000, to cover an estimated budget of $12,35$. This will leave approximately $22,000 to meet the installment that would become due on the courthouse in 1914, say $9,587.50.’
“Taking these figures to be correct (and we assume that they are, as they were made by the judge of the district court, upon an exhaustive analysis of the testimony), then what becomes of plaintiffs’ contention on this point?”
Imitating the example of the learned counsel, we shall not analyze the figures disclos *454 ed by tbe testimony, but shall assume that those given by the learned judge a quo are correct. So assuming, we find that the revenues of the parish of Morehouse, for the year 1913, yielded (or were expected to yield, though but little had been collected when this case was tried) a surplus of $8,275.18, and that the first installment, to fall due in 1914, on the courthouse contract will amount to $9,587.50.
The law under which defendants are proceeding provides as follows:
“Police juries * * * shall also have authority to make, in any year, agreements or contracts dedicating in whole or in part the excess of annual revenues of subsequent years above statutory, necessary and usual charges, provided that no such agreement or contract shall have any longer term fixed for payment than ten years from the date of the agreement or contract; * * * and provided further that no dedication of future revenues shall be made which, alone or with other prior dedications in force, shall exceed the estimated excess of revenues over the statutory, necessary and usual charges of the year in which the agreement or contract is made.” Act No. 128 of 1910, pp. 199, 200.
Comparing the accepted figures with the law thus quoted, it is evident that the figures are not within the law, by the amount of the difference between $9,587.50 and $8,275.18, or, say, $1,312.32. In other words, though the law declares that there shall be no dedication of future revenues which shall exceed the surplus of the year in which the contract is made (or the excess over the statutory, necessary, and usual charges for such year), the ordinance here complained of makes a dedication of $9,587.50 against an estimated surplus for the year 1913, when the-contract was to have been made, of $8,275.18.
It is no answer to the objection to such a course to say that, in determining the amount of the “estimated excess of revenues over the statutory, necessary, and usual charges” for a particular’ year, with a view of comparing it with the total future revenue to be dedicated, we are not to take into consideration any balance from previous years which may have been expended during the year of the contract or dedication or any abnormal and unusual expenses, incurred prior to the making of the contract, which have been provided for, and which are to terminate before the contract begins to run. We concede the correctness of that view. But as we understand it, those factors have not been taken into consideration by our learned brother of the district court in reaching the figures stated. He takes the total assessment to be $3,835,000, and the total proceeds of the 10-mill tax, based on that assessment, to be $38,350. He says that the police jury proposes to give one-half of that amount, $19,175, to the schools leaving a balance of $19,175 from which there are to be deducted various estimated expenses, aggregating $10,899.82, which he deducts from the $19,175, and finds the balance or surplus of $8,275.18. The budget of expenditures for the year 1913, adopted by the police jury in October, 1912, foots up $32,500, though it allows only $5,000 for bridges, whereas that item amounted to $7,000, and allows only $14,000 for the schools, as against $19,175 allowed by the trial judge. A tentative estimate or budget for the year 1914, filed by defendants, fixes the “statutory, necessary and usual expenses” at $12,353, and we see no reason to doubt that it may be worked out, but that has nothing to do with the matter now before the court, any more than would an estimate of the expenditures for the year 1923 — the last year of the contract — since, the dedication of revenues for the purposes of the contract is to be predicated upon the “excess,” etc., for the year the contract is made, not the next year, or the last year during which the contract is to run, or any other year.
It is to be remembered that this suit was brought in October, 1913, to enjoin further proceedings under Ordinances Nos. 88 and 89 of the police jury, adopted upon October *456 9, 1913. The ordinances were to have become operative at once, but, for the reasons assigned, we are of opinion that the necessary conditions did not then exist. Whether the same action might legally have been taken after the beginning of the present year is a question which is not now before us, upon which we express no opinion, and with respect to which the parties hereto are not to be concluded by the judgment to be her'ein rendered. For the reasons thus assigned, it is ordered that the judgment appealed from be reversed, and that there now be judgment for plaintiffs prohibiting and enjoining defendants from further proceeding in the execution of .any engagement or contract entered into in 1913 with respect to the dedication of any future revenues of the parish of More-house for the building of a courthouse for that parish. It is further decreed that, as to any such engagement, contract, or ordinance that has been, or may be, entered into or adopted in the year 1914, the rights of the parties hereto be held to be entirely unaffected by this judgment. It is further decreed that defendants pay all costs.