O’NIELL, J.
The plaintiffs, taxpayers of the parish of Morehouse, sued to enjoin the police jury and the frails City Construction' 'Company from proceeding with the construction of a new courthouse.
The allegations on which the injunction was demanded are: (1) That the defendant pc/lice jury was enjoined by a final decree of the Supreme Court of this state from carrying out the contract entered into in 1913. for the construction of the courthouse; and, *537 in 'tlie alternative (2) that, if the defendants are proceeding under a contract made in 1914, the proceedings are illegal because the expenses and appropriations of that year are exceeding and will greatly exceed the revenues; that the budget or estimate of expenses for the year 1914 was not made in good faith, and is not correct; and that the parish is not in a financial condition to carry out the contract.
The district judge issued a rule nisi, to which the defendants filed various exceptions .and a plea 'of estoppel. The exceptions were overruled and the plea of estoppel was referred to the merits. On suggestion of the •district judge that the case was of public importance, and that the rule to show cause why the injunction should' not issue should not be decided on the pleadings, the defendants filed an answer and put at issue the allegations of the plaintiffs’ petition.
The averment that the police jury was enjoined from carrying out the contract made in 1913 by a decree of this court refers to the decision in the case of Williams et al. v. Police Jury of Morehouse Parish, 135 La. 445, 65 South. 604. When it was shown on the trial that the defendants were .proceeding under a contract entered into in 1914, the plaintiffs formally abandoned their first ground for demanding an injunction. On the alternative allegations that the budget was not made in good faith, that the expenses and expenditures of 1914 would exceed the revenues of that year, and that the parish was therefore not in condition financially to carry out the contract, judgment was rendered against the plaintiffs, rejecting their demand for an injunction; and they have appealed.
Opinion.
There is no proof whatever that the budget for the year 1914 was made in bad faith or was not a fair and reasonable estimate of •expenditures, or that it will not work out. The assessed valuation of property on which the 10-mill tax was levied for all purposes is, according to the last assessment, $3,835,-000. The 10-mill tax was apportioned and dedicated as follows:
School tax ........................ 3 mills $11,505 00
Statutory, necessary, and usual charges, including incidental and contingent expenses........ i>/2 mills $17,257 50
Courthouse building £und........214 mills $ 9,587 50
Total revenues from 10-mill tax........ $38,350 00
The total sum of all items of statutory, necessary, and usual charges, including incidental and contingent expenses, in the budget of 1914, amounts to $17,260, that is only $2.50 more than the taxes dedicated for that purpose. In this, however, is reserved $5,-905, for incidental and contingent expenses, which may not all be needed. And the amount budgeted for the first payment on the courthouse contract is $9,585; whereas the first payment amounts to only $9,100. Hence there will be an excess of $485 on this item.
The budget of expenditures for 1914 is as follows:
For public schools, 3-mill tax on $3,835,000... $11,505
For courthouse building fund.................. $ 9,585
Statutory, necessary, and usual charges, incidentals, etc..................................$17,200
Total .........................................$38,350
The items on this budget which are not estimated but certain are:
Total revenues .................................. $38,350
School fund ............................ $11,505
Courthouse building fund.............. $ 9,100 .
Statutory, necessary, .and usual charges ................................ $11,355
Total fixed expenditures........... $31,960 $31,960
$ 6,390
Amount budgeted for incidental and contingent expenses ................................. $ 5,905
Estimated excess, over all expenditures.. $ 485
It was shown on the trial that warrants aggregating $17,639.22 had been drawn during the year 1914, up to the date of trial, that is, the 27th of July. Of this, however, $9,- *539 834.22 was for debts contracted in 1913, and only $7,S05 was for expenses incurred in 1914. Tliere was an accumulation of about $17,000 from previous years, carried over as a balance from 1913, out of which was paid the $9,834.22 for debts contracted in that year, leaving the accumulation exceeding $7,-000.
The plaintiffs’ counsel contend that the $9,-834.22 paid in 1914 for debts contracted in 1913 should not have been paid out of the balance carried over from that year, but should have been charged against the rev-' enues of 1914. The result would be that the expenditures of the parish would be paid, not out of the revenues of the year in which the debts were contracted, but out of the revenues of the year in which they are paid. That, in our opinion, would be not only impracticable and unbusinesslike as a matter of bookkeeping, but contrary to the law. Section 3 of Act No. 30 of the Extra Session of 1877 provides that:
“The revenues of the several parishes and municipal corporations of this state, of each year, shall be devoted to the expenditures of that year; provided, that any surplus of said revenues may be applied ,to the payment of the indebtedness of former years.”
This statute was amended and re-enacted by Act No. 32 of 1902, the second section of which reads as follows:
“The revenues of the several parishes and municipal corporations of this state, of each year, shall be dedicated as follows: First, all statutory charges shall be paid from the respective funds upon which they are imposed; second, all charges for services rendered annually under time contracts; third, all necessary usual charges provided for by ordinances or resolution. Any excess of revenue above statutory, necessary and usual charges may be applied to the payments of amounts due an'd unpaid out of the revenues of former years.”
Section 2 of Act No. 32 of 1902 was amended by making certain additions thereto and was re-enacted by Act No. 12S of 1910, but the section, as quoted above, was copied verbatim in the amending act.
It has been held repeatedly that the city of New Orleans cannot be compelled by mandamus to pay a debt out of the taxes of any other year than that in which the debt was-contracted; and this doctrine should apply to other municipal corporations and to parishes. See Creole Fire Co. v. City of N. O., 39 La. Ann. 981, 3 South. 177; Barber Asphalt Paving Co. v. City of N. O., 43 La. Ann. 464, 9 South. 484; State ex rel. Fernandez v. City of N. O., 45 La. Ann. 1389, 14 South. 291; Wadsworth v. New Orleans, 48 La. Ann. 886, 19 South. 935; Manuel Abascal Co. v. City of N. O., 48 La. Ann. 565, 19 South. 568; Receiver of Southern C. & F. Co. v. City, 49 La. Ann. 804, 21 South. 870; and State ex rel. Woulfe v. Judge, 107 La. 777, 32 South. 88.
In Williams v. Police Jury, 135 La. 453, 65 South. 604, it was held that balances carried over from previous years and expenditures for debts contracted in previous years should not be taken into consideration in estimating the excess of revenues over statutory, necessary and usual charges of the year in which the contract was made, for which the future-revenues were dedicated. From which it follows that debts contracted in previous years-should be paid out of the surplus carried over from previous years.
The judgment appealed from is affirmed at the cost of appellants.