No. 10,458.

KISTNER, EXECUTRIX, v. CITY OF INDIANAPOLIS ET AL.

CITY.—*Power over Streets.*—*Railroad Tracks.*—*Running of Trains.*—*Security
of Citizens.*—*Non-Exercise of Legislative Power.*—*Liability for Personal In-
jury.*—Under section 3161, R. S. 1881, the common council of an incor-
porated city has exclusive power over the streets, highways and alleys
within such city, and may grant a railroad company the right and
privilege to lay down and use railroad tracks over, along or across such
streets, highways or alleys.   Under the *forty-second* clause of section
3106, R. S. 1881, such common council may provide, by ordinance, for
the security of citizens and others from the running of trains through
the city, and, to that end, may require such railroad company to pro-
vide and use suitable safeguards at the intersections of streets, highways
or alleys, or elsewhere, within such city; but such city is not liable in
damages for injuries to persons or property, which may result from the
non-exercise of such legislative power by its common council.

Kistner, Executrix, v. City of Indianapolis et al.

RAILROAD.—*Negligence.*—*Proximate Cause.*—*Intervening Agency.*—*Sufficiency of Complaint.*—In an action to recover damages for the death of the plaintiff's testator, caused, as alleged, by the defendants' negligence, there is no error in sustaining a demurrer to the complaint, where it appears, upon its face, that such negligence was not the proximate cause of such death, but that it resulted directly from the act of an intervening agency, over which the railway company defendant had no control.

From the Marion Superior Court.

*N. B. Taylor, F. Rand* and *E. Taylor,* for appellant.

*C. S. Denny, T. A. Hendricks, A. W. Hendricks, C. Baker, O. B. Hord, A. Baker* and *E. Daniels,* for appellees.

HOWK, J.—This was a suit by the appellant, Rosina Kistner, executrix of the last will of John G. Kistner, deceased, against the appellees, the City of Indianapolis and the Union Railway Company of Indianapolis, to recover damages for the death of her testator, caused, as alleged, by the wrongful acts or omissions of the appellees, and each of them. The appellant's complaint was in three paragraphs, to each of which the separate demurrers of the appellees, who severed in their defence, were sustained by the court at special term. The appellant excepted to these rulings of the court, and, declining to amend or plead further, judgment was rendered against her for the appellees' costs. On appeal this judgment was affirmed by the general term, and from the judgment of affirmance this appeal is now here prosecuted.

By a proper assignment of error, the appellant has brought before this court for decision the question of the sufficiency of the facts stated in each paragraph of her complaint to constitute a. cause of action in her favor and against each of the appellees.

In the first paragraph of her complaint, the appellant alleged that each of the appellees was a corporation organized. and acting under the laws of this State; that there was, and had been, in the city of Indianapolis, since its original survey, a public street called "Illinois street," which had been and was used for travel and passage as a public street; that Illinois street ran north and south through the city of In-

dianapolis, and on and adjoining such street, on the east side thereof, and between two streets of such city called Louisiana street and McNabb street, which ran east and west at right angles with Illinois street, the appellee, the Union Railway Company, owned the building and premises known as and called the "Union Depot," and seven railroad tracks connected therewith; that five of such railroad tracks were laid down in and ran through such Union Depot from east to west, and extended entirely across Illinois and its west sidewalk, and two of such railroad tracks were laid down in and ran along Louisiana street, and across Illinois street and its west sidewalk, nearly parallel with the other five tracks and immediately north of and only a few feet from the most northerly of such five tracks, and that the distance from the north edge of the most northerly of the seven tracks, to the south edge of the most southerly of the same, did not exceed two hundred feet; that the seven railroad tracks were laid down and owned by the appellee, the Union Railway Company, to which company the appellee, the city of Indianapolis, granted and gave the right to use and occupy the said part of Illinois street for, with and by such railroad tracks, and to maintain and use the same for running trains out of, into and from such depot by steam locomotives; that such grant was made by the city of Indianapolis to the Union Railway Company more than ten years prior to the filing of this complaint, and immediately thereafter the company laid down the railroad tracks, and had since maintained and used the same for running trains of cars into, through and from the Union Depot by means of locomotives propelled by steam ; that the city of Indianapolis knew, when it made such grant and gave such permission to occupy such street with and lay the railroad tracks in and across Illinois street, that it would make the crossing dangerous and liable to accident; that the seven tracks were used by fourteen railroad companies in connection with the Union Depot, by license of the Union Railway Company, which fourteen companies pay the Union Railway Company toll or

rent for the use of the depot and its tracks, and trains of cars drawn by locomotives, propelled by steam, were and had been passing and repassing on and over the seven tracks, or some of them, across said part of Illinois street and the west sidewalk thereof, every hour in the day and night for ten years, and sometimes trains were passing on each track at the same time.

Appellant further alleged that it was the duty of the city of Indianapolis when it made such grant to the Union Railway Company of the right to occupy Illinois street with its railroad tracks, and to use the same in connection with its depot for the purposes aforesaid, to provide for the proper care and protection of such street and sidewalk, at the crossing of the railroad tracks, and to require that the Union Railway Company should provide for and maintain the proper and suitable protection and safeguards, so that the passage of vehicles and passengers on, along and over the part of Illinois street and sidewalk used, occupied and crossed by the seven railroad tracks, would be safe and convenient for travel and passage, and kept in that condition, and to see that the Union Railway Company suitably and properly protected and provided for the safe passage over and use of such part of Illinois street and sidewalk by the citizens of the city and the public generally, having occasion or need to pass on, along or over the same; and in case of the failure of the Union Railway Company so to do, or if the city of Indianapolis failed to compel such company to make and keep up such protection and safeguards, it was then the duty of such city to make, keep up and continue such provisions for the protection of said crossings; but the appellant averred that the city of Indianapolis had wholly disregarded its duty in that behalf, and did not require the Union Railway Company to put and properly keep up suitable guards, and provide for their maintenance and use, so as to protect travellers along such street and across such railroad tracks from harm, and had never taken any steps to compel such company so to do; that the Union Railway Company had never put up, nor kept and

maintained, proper or sufficient guards upon, nor on either side of, such seven tracks, nor made suitable or any provision, nor kept up, maintained and used the same, for the protection of travellers on or along and across the part of Illinois street and sidewalk, across such railroad tracks, although it was the duty of such company so to do, without order from or compulsion by the city of Indianapolis; and that the Union Railway Company knew that the crossing was dangerous, and accidents were liable to happen at any hour of the day or night, and that it was necessary the crossing should be protected and guarded to prevent accidents from the use of such tracks.

The appellant then alleged, at great length and with some repetition, the duty of the city of Indianapolis to provide and maintain proper and suitable safeguards for the protection of all persons passing to and fro on Illinois street and its sidewalk, in vehicles or on foot, over the crossing of the seven railroad tracks, the knowledge of the city that the crossing was very dangerous, and that accidents were liable to occur there at any time, and the total failure of the city, with such knowledge, to provide or maintain any safeguards or protection at such crossing, and that no guards or protection of any kind had ever been provided or used to protect from harm or injury travellers or passengers, on foot or in vehicles, upon such part of Illinois street and sidewalk, across such railroad tracks, although such provision and protection were of the first necessity; that the street and sidewalk, where the same were crossed by the seven railroad tracks, were in the central and most populous portion of the city of Indianapolis, and were much used by citizens of the city and other persons who had no convenient way of avoiding or going around such crossing; that such crossing might have been protected and rendered sufficiently safe for persons using the same and passing along and over the street and sidewalk, by placing movable bars or safety-gates or guards across such street and sidewalk just north and south of the

seven railroad tracks, and providing a watchman to operate the same and close such bars or guards when trains of cars were passing on and over any of such tracks across such street and sidewalk; that it was proper, necessary and usual on streets in cities, where crossings by railroad tracks were located, to put up, keep in order and use such bars or gates, or other sufficient safeguards, to prevent injury to and protect from harm persons passing along and over such crossings, and to prevent trains of cars from coming in contact with such persons, and also to prevent vehicles, drawn by horses, from being driven upon and over such crossings when trains or locomotives were moving on or over such crossing on any track on and crossing such street or sidewalk, and from coming in contact with or injuring persons passing on and over such crossing at such times, and especially to prevent the occurrence of accidents and injuries such as the one thereinafter mentioned; and it was the duty of the appellees to put up, keep and maintain such sufficient barriers or other safeguards, and to have the same constantly kept in place and used for the purposes aforesaid, at the crossings of the seven tracks on and over Illinois street and its sidewalk.

The appellant further alleged that the appellees and each of them were guilty of gross neglect, the city in permitting the seven tracks to be used by the Union Railway Company, without being protected by such movable bars, safety-gates or other safe and suitable protection, and the Union Railway Company in using such tracks and permitting them to be used by other railroad companies without being protected by such movable bars, gates or other sufficient safeguards; and no protection or proper safeguard of any kind had been made, provided or used at such crossing to prevent injury to persons passing along and across such seven tracks.

The appellant further alleged that, on April 19th, 1881, her testator, John G. Kistner, was a citizen of the city of Indianapolis, and in full life, and was engaged in business at No. 83 on South Illinois street, in such city, a short distance

north of the crossing of such street and its west sidewalk by
the seven railway tracks aforesaid, and he resided south of
such crossing of such street and sidewalk, at No. 336 on
South Meridian street, and his most direct route in passing
between his dwelling-house and store was along Illinois street
and across the part thereof crossed by such seven railroad
tracks; that on the evening of April 19th, 1881, the appel-
lant's testator, John G. Kistner, started from his store to go
to his dwelling-house, walking on and along the west side-
walk of Illinois street across such seven tracks, and the side-
walk across such tracks was at the time clear and unobstructed
by trains, cars or locomotives, or other vehicles of any kind;
that soon after he had started across such tracks, but while
he had sufficient time to pass across the tracks upon which
the train, thereinafter named, was backing, if not wrongfully
interfered with or prevented, before any trains, locomotives
or cars would reach such west sidewalk, a train of the In-
dianapolis, Decatur and Springfield Railway Company, one
of the companies that had the right to and did use the seven
tracks aforesaid, commenced backing out of the Union Depot
on one of such tracks, and John G. Kistner had passed south
of the track such train was backing upon and was entirely
clear of and free from any danger from such train if not wrong-
fully interfered with; that after such train had commenced
backing as aforesaid, a wagon and team belonging to the firm
of Archdeacon & Co., driven by one of their employees along
Illinois street from the part thereof south of the seven tracks,
were driven north upon and commenced crossing the seven
tracks, and when such employee had got within a short dis-
tance of and was approaching the track on which such train
was backing, he found that the train had moved so far back
that he could not pass it without making a circuit and driv-
ing further west near to and upon the west sidewalk of the part
of Illinois street crossed by the seven tracks; and to pre-
serve his own life and the lives of his team and save his
wagon from destruction, it was necessary that such driver

should, and he then and there did, make a circuit and drive the team and wagon further west and near to and upon such west sidewalk and around and abreast of the backing train; and, in so doing, the wheels of the wagon struck the said John G. Kistner and knocked and threw him down under the wheels of such moving train, which was backing at the time as aforesaid, and the wheels of the cars of such moving train passed over and crushed the body of the aforesaid John G. Kistner, who was then and there and thereby instantly killed. The appellant then averred that her testator, John G. Kistner, was so deprived of his life by and through the gross negligence of the appellees and each of them, in failing to provide, maintain and use the proper, suitable and necessary safeguards for the crossing of the seven railroad tracks over and across Illinois street and the sidewalk thereof, and without any negligence on his part; and that he left surviving him the appellant, his widow, and eight children, as his heirs at law, for whose use this suit was brought. Wherefore, etc.

The " material difference " between the three paragraphs of appellant's complaint is thus stated by her counsel : " The first charges that the act which resulted in the death of John G. Kistner occurred without the fault of Archdeacon & Co. ; while the others show that the proximate cause of his death was the negligence of Archdeacon & Co., but charge that such negligence was of a character which the defendants ought to have provided against, and, failing to do so, are liable for all the consequences." This, we think, is a fair and correct statement of the difference between the three paragraphs of complaint, and, as we have given a full summary of the facts alleged in the first paragraph, it is unnecessary for us to state the substance even of the other two paragraphs in this opinion.

We have given appellant's counsel the benefit of a full statement of the facts alleged in the first paragraph of the complaint, and whatever may be said of the sufficiency of any paragraph of the complaint, it must be conceded, as it

seems to us, that the learned counsel have made the very best possible use of the facts at their disposal in their statement of the appellant's· case.   If counsel were right in their statement of the legal duties of each of the appellees in the several paragraphs of the complaint, it might be difficult, if not impossible, to avoid the conclusion that each paragraph stated facts sufficient to constitute a cause of action.   But here, as it seems to us, lies the fundamental difficulty in each paragraph of the complaint, as against each of the appellees : the appellant has misapprehended, or, at least, misstated, the legal ·duties of each appellee, and especially so of the city of Indianapolis.   In each paragraph of the complaint it is stated that each appellee is a corporation, organized under the laws of this State.   But, of course, the city of Indianapolis is a municipal corporation, organized under and governed by the general laws of this State for the incorporation of cities; while the Union Railway Company is a corporation organized under .and governed by other and entirely different statutes of this State.   As to each of the appellees, however, it may be properly said that the rights, powers and duties of each corporation are, in the main, such as are expressed in, or clearly implied from, the law of its creation.   Every corporation is the mere creature of the statute under which it is incorporated, .and, as a general rule, the rights it possesses, the powers it may exercise and the duties enjoined upon it are to be found in or gathered from the statutory provisions which constitute the law of its being.

Does the appellant's complaint, or any paragraph thereof, state a cause of action against the appellee, the City of Indianapolis?   There can be no doubt in regard to the power of the city of Indianapolis over the streets of such city, and over Illinois street and its sidewalk at the place where the appellant's testator lost his life.   The power of the city over the streets, highways and alleys within its corporate limits is an "exclusive power."   Section 3161, R. S. 1881.   Nor can it be ·doubted that the city had the power to grant its co-appellee,

the Union Railway Co., the right and privilege to lay down and use the seven railroad tracks, leading from the Union Depot over and across Illinois street and the sidewalk thereof, within the city; nor that, in the exercise of such power, the city might have made such grant upon the express condition that its co-appellee should erect, maintain and use movable bars, safety-gates or other suitable safeguards for the protection of persons and property passing over and along Illinois street and its sidewalk at the crossing thereof by the seven railroad tracks. In the *forty-second* clause of section 3106, R. S. 1881, it is enacted that the common council of the city shall have the power to "provide, by ordinance, for security of citizens and others from the running of trains through any city, and to require railroad corporations to observe the same." We think therefore that the power of the city of Indianapolis to have compelled the Union Railway Co. to erect, maintain and use such proper and suitable safeguards, as seemed best to the city, at the place where the seven railroad tracks crossed Illinois street and its sidewalk, is clear and unquestionable.

But this power of the city is clearly, we think, a legislative or governmental power, conferred upon the city authorities and to be exercised or not in their discretion. It will not do to say that, for the non-exercise of this power, the city of Indianapolis can or ought to be held liable in damages to the appellant for the death of her testator. The case in hand as against the city can not be distinguished in principle from *Brinkmeyer* v. *The City of Evansville*, 29 Ind. 187, which was a suit against the city to recover damages caused as alleged by the failure of the city authorities to exercise the power conferred upon the corporation to provide water and efficient engines and apparatus for the extinguishment of fires. The court there said: "A municipal corporation is, for the purposes of its creation, a government possessing to a limited extent sovereign powers, which, in their nature, are either legislative or judicial, and may be denominated governmental or public. The extent to which it may be proper to exercise such powers,

as well as the mode of their exercise, by the corporation, within the limits prescribed by the law creating them, are, of necessity, entrusted to the judgment, discretion and will of the properly constituted authorities, to whom they are delegated. And being public and sovereign in their nature, the corporation is not liable to be sued, either for a failure to exercise them, or for errors committed in their exercise." The doctrine of the case cited, upon the point under consideration, has never been questioned in this court so far as we are advised, but it has been expressly approved and followed in the following more recent cases: *Faulkner* v. *The City of Aurora*, 85 Ind. 130; *Robinson* v. *The City of Evansville*, 87 Ind. 334; *City of Lafayette* v. *Timberlake*, 88 Ind. 330.

The cases cited are decisive of the appellant's case against the city of Indianapolis, as stated in each paragraph of her complaint, against her and in favor of such city. It is true that it is alleged in each paragraph of complaint, that it was the duty of the city of Indianapolis to provide and maintain proper safeguards for the protection of citizens and other persons passing on and along Illinois street and its sidewalk over and across the seven railroad tracks. But appellant's counsel have referred us to no provision of the statute, and we know of none, which imposed any such duty upon the city. Our conclusion is that the court committed no error in sustaining the separate demurrer of the city of Indianapolis to each paragraph of the complaint.

We are of opinion, also, that no error was committed by the court in sustaining the separate demurrers of the appellee, the Union Railway Company, to each paragraph of appellant's complaint. It clearly appears from the facts alleged in each paragraph, that the proximate cause of the death of appellant's testator was the act of the driver of the wagon of Archdeacon & Co., whether such act was negligent or otherwise, and, of course, that the negligence of the Union Railway Company, alleged in each paragraph, was not the proximate cause of such death. The intervening agency here was

so direct and positive in its nature and effect that the death of the testator can not be attributed, we think, to the alleged negligence of the Union Railway Company. Here lies the difference, as it seems to us, between the case at bar and the cases of *Billman* v. *Indianapolis, etc., R. R. Co.,* 76 Ind. 166, and *City of Crawfordsville* v. *Smith,* 79 Ind. 308, cited and relied upon by the appellant. Those cases are not in point here, and are not in conflict with what we now decide.

The judgment is affirmed, with costs.

Filed Feb. 13, 1885.