## CHARACTER OF FENCE REQUIRED ALONG A RAILROAD TRACK.

THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO. v. LIIDTKE, AN INFANT.

69 Ohio State—Decided, January 5, 1904.

*Fence Required by Section 3324, Revised Statutes—Does Not Require of Railroad Companies Fence Against Persons—Proximate Cause Question of Law and Fact—Boy Crawls Through Fence Upon Tracks—And is Injured—Fence Opening Not Proximate Cause of Injury.*

1. The fence required by Section 3324, Revised Statutes, is one sufficient to turn stock; and said section does not require railroad companies to fence against persons.
2. What was the proximate cause of an injury, is usually a mixed question of law and fact; but where the controlling facts are conceded or found, it is a question of law for the court.
3. A boy of six years of age having passed, with several of his companions, through an opening in a wire fence inclosing a railroad, sat down away from the tracks, in a place of safety, then suddenly arose and ran across one track to another, upon which a freight train was passing, and in attempting to grab or touch

a passing car, slipped and fell, and got his leg under a wheel, and it was crushed. *Held:* That the opening in the fence was not the proximate cause of the injury.

Error to the Circuit Court of Erie County.

The petition of the said Eddie Liidtke, plaintiff in the court of common pleas, is as follows, omitting the caption, signature and verification:

"The plaintiff says that he is an infant under the age of twenty-one years and brings this action by his father, Edward Liidtke, his next friend.

"The defendant is a railroad corporation organized and operating a railroad running through the city of Sandusky, Erie county, Ohio, and having control and management of the same.

"That the defendant's railroad and right of way runs nearly east and west through the city of Sandusky, Erie county, Ohio; that the line of the defendant's lands, right of way and main railroad tracks runs by and is located in front of and near the south end of Clinton street in said city; that the defendant was by law required to construct and maintain a good and sufficient fence along the lines of its lands' of its said right of way and said railroad track; that along the north line of the lands of said defendant and along the north side of said defendant's road and right of way, in front of and near the south end of Clinton street in said city, the defendant many years ago constructed or caused to be constructed a fence; that for one year and more prior to the sixteenth day of August, 1900, the defendant negligently permitted said fence to become and remain badly out of repair, and insufficient to such an extent that a section of said fence, the distance between two posts in front of and near the south end of Clinton street is said city was broken down, open and unobstructed, and persons had been accustomed for one year and more prior to the date above named to pass onto and from said defendant's right of way and railroad tracks through said fence where the same was broken down, unobstructed, and out of repair as aforesaid.

"That for one year and more prior to the date above named the defendant had knowledge that said fence was out of repair, in the manner aforesaid, and had knowledge that for more than one year prior to the date last named persons were accustomed to pass on to and from said right of way and said railroad track through said fence where the same was insufficient and out of repair as aforesaid.

"That on said sixteenth day of August, 1900, a train of the defendant consisting of engine and cars was negligently run over said right of way and said railroad track, at the place herein before mentioned, to-wit, in front of, and near the south

end of Clinton street at a very dangerous and high rate of speed, to-wit, more than six miles per hour, in violation of the ordinances of the city of Sandusky; that the bell was not rung nor the whistle blown on said engine at or near the south end of said Clinton street when said train was approaching the same, although the defendant, its servants and agents employed in the running of its said trains knew and had known for more than one year prior to the sixteenth day of August, 1900, that said fence was badly out of repair as aforesaid, and that persons were accustomed to enter upon said railroad track and right of way through the same, where the same was insufficient and out of repair as aforesaid, and that by reason thereof it was very dangerous to run said train on said track at said point at such a high rate of speed without blowing the whistle and ringing the bell. That the defendant negligently failed to have any watchman or other person at said point to look out for or give warning to persons, especially children, about to go upon said railroad, and negligently failed to have any contrivance at or near the point named to give the alarm or warning to persons in the vicinity of said track and about to go upon the same of the approach of trains, although the south part of said Clinton street and vicinity was and is thickly settled and inhabited, and a great number of small children of tender years and immature judgment and experience reside there, all of which the defendant well knew and had known for more than one year prior to the date hereinbefore mentioned.

"That on the sixteenth day of August, 1900, the plaintiff, a child of six years of age, wandered, strayed and went upon said railroad track when said train was passing over the same, through said defective and insufficient fence as aforesaid, and was run over by said train, and one of his legs a short distance below the knee was cut off, and he was otherwise severely bruised and injured. That the injuries sustained by the plaintiff as aforesaid is due entirely to the negligence of the defendant as hereinbefore stated, and would not have happened were it not for the negligence of said defendant.

"That the injury so caused, and sustained by the plaintiff, caused him to be confined to his bed for a long period of time, to suffer intense pain and to incur great expense for medical aid and attendance, and to undergo painful surgical operations; and that by reason of said injuries he will be forever crippled and disabled.

"Wherefore, plaintiff says he has sustained damages by reason of said injuries so caused by the defendant the sum of twenty-five thousand dollars ($25,000), for which sum he asks judgment."

The answer of the railway company is as follows, omitting caption, signature and verification:

"Defendant admits that it is a corporation duly organizd and existing under the laws of the state of Ohio as in the petition alleged, and that its railroad passes through the city of Sandusky, Ohio; and that the south end of Clinton street is near the north line of its right of way.

"It admits that a train consisting of an engine and cars passed over its railway upon the sixteenth of August, 1900, and that said Eddie Liidtke was injured upon said date.

"And furthering answering denies each and every allegation, statement and averment in said petition contained not herein expressly admitted to be true.

"*Second Defense.* And further answering and by way of a second defense to petition of plaintiff filed herein, defendant says that said accident by which Eddie Liddtke was injured was brought about and caused by carelessness, negligence, default and want of care of said Eddie Liidtke, his parents, guardians and those having him in charge, and not by any fault or negligence, default or want of care upon the part of defendant, its servants, agents or employes.

"Wherefore, defendant prays that having fully answered it may go hence without day and recover its costs herein."

The reply is, in legal effect, a general denial of the answer, except in so far as it admits some of the averments of the petition.

The cause was tried upon the pleadings and evidence, and at the close of the plaintiff's evidence, the jury having viewed the premises, the court, on motion of defendant below, arrested the cause from the jury, and rendered judgment in favor of the railway company.

A motion for a new trial was made by the plaintiff, and overruled by the court, and proper exceptions saved. The circuit court reversed the judgment, and remanded the cause for a new trial.

Thereupon the railway company filed its petition in error in this court, seeking to reverse the judgment of the circuit court, and for an affirmance of the court of common pleas.

*Geo. E. Reiter, George C. Greene* and *Frank J. Jerome,* for plaintiff in error.

*E. B. King* and *John F. McCrystal,* for defendant in error.

BURKET, C. J.; DAVIS, SHAUCK, PRICE and CREW, JJ., concur.

Counsel for defendant in error makes the following statement of facts in his brief:

## "FACTS.

"The testimony shows that the Lake Shore & Michigan Southern Railway runs through the city of Sandusky in a substantially east and west direction; that about 400 feet east of Camp street is the Lake Shore & Michigan Southern passenger station, and its freight depot is some distance farther east; that Camp street, running north and south, crosses the Lake Shore & Michigan Southern Railway tracks; that no other street does cross the tracks west of Camp street, until Mills street is reached, which is 1,985 feet west of Camp street.

"Between Camp street and Mills street are the streets of, in the order named from east to west, Pearl, Clinton, Harrison and Putnam. None of these cross the railway company's right of way. Clinton street, running north and south, is sixty-six feet wide and runs to the north line of the railway company's right of way. In the vicinity of Clinton street, and in this section there are a good many houses and a great many people live there. It is quite thickly settled.

"The plaintiff, at the time of his injury, lived with his parents and brothers and sisters, at No. 903 Clinton street, which was one square and the second house in the second square from the railroad. The plaintiff's father and older brother were common laborers. Ida, his sister, was thirteen years of age at the time of the accident. Otto, his brother, was eight, and Eddie, the plaintiff, was six on the eleventh day of April, 1900. A neighbor had been injured while working, and Mrs. Liidtke, after eating breakfast and leaving the children at the table, went over to find out what was the matter. This was about eight o'clock, sun time. The mother left these children at the breakfast table when she went away. She told them to stay in the house. While she was gone, Ida and her brother Otto went out into Clinton street and up towards the railroad to play with some children there, and Eddie came out afterwards and joined them.

"While they were up there some of the other children proposed to go over across the track where there was a coal chute, then known as the Lake Erie & Western coal chute. The children had a basket, and the older ones, including his brother and sister, went across the tracks, leaving Eddie playing with some small children and a little express wagon, north of the right of way. There had been and was a fence along that line of the right of way across Clinton street, and extending all the way from Camp street to Mills street, but near the center of Clinton street this fence had been broken down or cut away. It was made of wires running horizontally and perpendicularly and these had been cut near one of the fence posts and swung or bent back, leaving an opening from the ground up to the

top wire, which was not connected with the others and was left on the posts. This opening was about six feet in width and about the same height above the bottom of a path worn in the street. This opening had been used by all who had occasion to cross the track, and especially by railroad employes, for a long time.

"The children picked up coal on the ground and filled a small basket and carried it across the track and put it in the express wagon. Eddie remained with the other little children, playing in the street. Eddie did not cross the railroad track with his older brother and sister, but after they had come back and were playing about, Eddie ran through the opening in the fence and up near the track, and the sister ran after him.

"They stopped when they came to the embankment, which is several feet high at this point, and sat down, so the witness Ida testifies on page 40 and 41, when Eddie jumped up and ran up to the track, crossing one track to the other track. A freight train was going west which attracted his attention, and he evidently ran up and tried to grab a car or touch it as it passed, when in some way he slipped or fell and got his leg under the wheel.

"Here, let me say there is no evidence to sustain the statement in brief for the plaintiff in error, that Eddie, the defendant in error, went there to pick up coal; on the contrary. the evidence is that his older brother and sister went together and left him in the house, but that he followed them out, but he remained on the north side of the track, that is, the side towards his home, while Ida and Otto went across the track and picked up, not several baskets, but one, and brought it across and set it in the express wagon. It was a basket perhaps twelve inches long and six or eight inches wide, and the coal they got was loose coal lying on the ground, a common and usual thing, and which does not warrant the heated statements that Eddie was out there stealing coal. It was coal that any one who saw might pick up and carry away and nobody objected to it. If the children of these poor people did not get it, the railroad employes did, or their children, and no one objected to their picking up this coal.

"Again, in plaintiff's brief is the statement that the fence was admitted to be a suitable one and the only defect was a hole which the railway company had not repaired. It is claimed by us that the fence where maintained and kept up, was suitable, but it was not suitable at the place where this opening was, which was not a small hole in the fence, but an opening that permitted men of ordinary height to travel through, backwards and forwards, without any difficulty; an opening through which, if it had been necessary, a team of horses and wagon could

have been driven without any difficulty whatever. No negligence is claimed for the manner in which the train was run.''

Much of this statement of fact is immaterial, but the whole is here given, so that defendant in error may have the full benefit of all he claims. The record does not disclose that any fact was proved favorable to the defendant in error, which is not included in this statement of facts by his able counsel, and therefore this statement, as to him, must be taken as the conceded facts of his case.

Upon the petition, and this statement of conceded facts, the question as to the proper construction of Section 3324, Revised Statutes, arises, and the further question as to whether the defect in the fence was the direct or proximate cause of the injury to the boy.

So much of said Section 3324 as is applicable here, reads as follows:

''A company or person having control or management of a railroad shall construct, or cause to be constructed and maintain in good repair on each side of such road, along the line of the lands of the company owning or operating the same, a fence sufficient to turn stock; and when such fence is constructed out of barbed wire, or separate lateral strands not connected by interwoven wire, or cross perpendicular wire not more than fifteen inches apart, there shall be securely fastened to the posts, at the top of the same, at right angles thereto, at least one board not less than one and one-eighth inches thick and five inches wide, and extending the entire length thereof; and before operating such road shall cause to be maintained at every point where any public road, street, lane or highway used by the public, crosses such railroad, safe and sufficient crossings, and on each side of such crossings cattle-guards sufficient to prevent domestic animals from going upon such railroad; and such company or person shall be liable for all damages sustained in person or property in any manner by reason of the want or insufficiency of any such fence, crossing or cattle-guard, or any neglect or carelessness in the construction thereof, or in keeping the same in repair.''

The burden, duty, or obligation imposed by this statute upon railroad companies is to construct and maintain in good repair, on each side of the railroad along the lines thereof, ''a fence sufficient to turn stock,'' and to cause to be maintained at public road, street, lane, or highway crossings, ''safe and sufficient

crossings," and on each side of such crossings, "cattle-guards sufficient to prevent domestic animals from going upon such railroad."

It will be noticed that the fence must be sufficient to turn stock, and the cattle-guards sufficient to prevent domestic animals from going upon the railroad, but that the crossings at highways must be simply "safe and sufficient," that is, safe and sufficient without limitation, that is for all purposes, persons, as well as property. The fences and cattle-guards are therefore only for the purpose of keeping stock and domestic animals off the railroad, and the "safe and sufficient crossing" at highways, etc., is for the purpose of affording safe passage for persons and property across the railroad. It is therefore clear that the fences and cattle-guards are not for the purpose of keeping persons off the railroad, but only stock and domestic animals. This is made clear by both the words and purpose of the statute. Stock and domestic animals only are mentioned, and these words do not include persons. If the General Assembly had intended to cause railroads to fence against persons, it would have used words clearly showing that intent. Another reason why this construction should prevail is, that it is impracticable, if not substantially impossible, for a railroad company to fence against persons. While a fence, pig-tight, horse-high, and bull-strong, as put by a western judge, might impede the progress of some persons, others, as for instance young men, boys, and even some girls, would scale such a fence with the nimbleness of a squirrel. The General Assembly has not required the impossible from railroad companies, nor that they should fence against the aged and children, and not against the youthful and athletic. In *Railroad Co.* v. *Schultz,* 43 Ohio St., 278, this court held that this section should receive a reasonable construction; and it would be a strained and unreasonable construction to hold that the words stock and domestic animals, include persons. Again, railroad companies, as to passengers and property in their care for transportation, are required to exercise the greatest care, but as to other persons only ordinary care. To construct and maintain fences so as to keep persons off the railroad, would not be ordinary, but extraordinary care, in effect insurance against injury; and as the General Assembly has not required such

extraordinary care in other matters, it can not be presumed that it intended to require it in this section, without plain and explicit words showing such intent.

We therefore conclude that the railroad company was under no obligation to fence against persons, and that it was guilty of no negligence of which this little boy could complain, in failing to keep its fence in repair at the head of Clinton street. Such failure did not in any manner violate any of his legal rights, and where no legal rights are infringed there can be no remedy in damages. *Railroad Company* v. *Bingham,* 29 Ohio St., 364, 369; *Letts* v. *Kessler,* 54 Ohio St., 73, 85.

But our attention is called by counsel for defendant in error to the following part of the section, as creating a liability on part of the company:

"And such company or person shall be liable for all damages sustained in person or property in any manner by reason of the want or insufficiency of any such fence, crossing or cattle-guard, or any neglect or carelessness in the construction thereof, or in keeping the same in repair."

This part of the section provides a remedy for the violation of the duty or obligation imposed in the forepart of the section and can be no broader than the duty or obligation there imposed; and as the duty or obligation to fence was not to fence against persons, but against stock, the remedy in damages must be for a breach of duty or obligation arising from stock getting onto the railroad by reason of a defective fence. The crossing at a highway may be defective or insufficient, and thereby damages to person or property, or both, may be sustained, and for such the railroad company would be liable. A cattle-guard may be defective, and domestic animals may, by reason of such defect, get upon the railroad and cause damage to person or property, or both, and for such the company would be liable. So a fence may be defective, and by reason thereof stock may get upon the railroad and cause damage to person or property, or both, and for such the railroad company would be liable; but if a person uninvited goes upon a railroad through or over a defective fence or cattle-guard, and suffers injury to person or property while so on the railroad, the defect in the fence or cattle-guard is no ground for recovery of damages. If he can recover at all, his recovery must be based upon what occurs

after he gets upon the railroad, and not upon the defect in the fence or cattle-guard, through or over which he reached the railroad.

The case of *Nickolson* v. *Railroad,* 80 Minn., 508, s. c., 18 American and English Railroad Cases, 682, and other like Minnesota cases, are cited and relied upon by counsel for defendant in error, as showing that the want of a fence, or a defective one, may be shown to prove negligence on part of the company in an action for damages for killing or injuring a trespassing child.  But all those cases are founded upon a statute of that state which is much broader than ours, and therefore they throw no light upon the construction of our statute.

The case of *Hayes* v. *Railroad Company,* 111 U. S., 228, is also cited and relied upon; but the obligation imposed upon the company in that case was to build a suitable wall, fence or other sufficient work as would prevent animals from straying upon the tracks, and secure *persons* and *property* from damage. Persons being included in the ordinance, so broadened the obligation as to warrant the ruling there made.

In the case of *Railroad Company* v. *McDonald,* 152 U. S., 262, also cited and relied upon by counsel for defendant in error, the railroad company owned and operated a coal mine a short distance from its station, and deposited the slack between the mine and the station, and a path ran along the edge of the slack leading to and from the mine.  The slack caught fire and burned underneath, emitting no smoke or other evidence of the fire, there being ashes and a crust over the fire.

A statute of the state required such slack piles to be fenced in such manner as to prevent loose cattle and horses from having access to such slack piles.  A boy of twelve years, and his mother, arrived at the station, and with her permission he visited the coal mine in company with another boy, and, becoming frightened, started to run along said path to where his mother was, and meeting another person in this narrow path, stepped upon the ashes and crust covering the fire underneath, broke through, and was badly burned and injured.  He brought an action against the railroad company for damages, and proved the above facts, and was allowed to prove that the company failed to fence said pile of slack as required by statute.  The plaintiff below recovered a judgment, and the

railroad company took the case on error to the Supreme Court, where the judgment was affirmed. The judgment of affirmance is based upon the doctrine of dangerous and unprotected pits near a traveled way, and *Railroad Company* v. *Stout,* 17 Wall., 657, which was a turn-table case, is cited and approved as applicable to the case. True the court say in the opinion:

"Primarily that statute was intended for the protection of cattle and horses. But it was not for that reason wholly inapplicable to the present case upon the issue of negligence."

It is negligence to have an unprotected, unfenced, dangerous pit near a traveled path, without a statute requiring it to be fenced, and it is no less negligent where there is a statute requiring such fencing. The court therefore well said that the statute was not *wholly* inapplicable upon the issue as to *negligence.* But that is far from holding that the failure to fence the pile of slack, irrespective of its surroundings, was in and of itself actionable negligence. The failure to fence in that case was properly received as an element aiding the proof of negligence in retaining a dangerous pit in an unprotected condition near a traveled path, and not for the purpose of establishing negligence by the mere proof of a failure to fence. In the case at bar no negligence is claimed, other than the defect in the fence, and that defect could not aid the proof of other negligence when no such other negligence existed. The two cases are therefore not in conflict, but perfectly consistent, and the slack pile case is not an authority sustaining the doctrine that railroad companies are required to fence against persons.

. There is another reason why the common pleas was right and the circuit court wrong. The defect in the fence was not the proximate cause of the injury. The little boy passed through the fence upon the railroad grounds to an embankment several feet high and north of all the railroad tracks, and sat down, being then with his companions in a place of safety. A freight train was going west which attracted his attention, when he jumped up and ran across one track to the next one south, and ran up and tried to grab or touch a car as it passed, when he slipped or fell, and got his leg under the wheel. The injury was caused directly and proximately by his slipping and fall-

ing, and was the result of an inevitable accident. The injury was not even remotely caused by the defect in the fence, else why were not his companions also injured, they having passed through the same defective fence?

But it is urged that the question as to what was the proximate cause was one for the jury, and not the court. The question as to proximate cause is usually a mixed question of law and fact, and is for the jury under proper instructions. But when the facts are conceded, as in this case, it becomes a pure question of law for the court. In this regard the question of proximate cause is not different from the question of negligence, or contributory negligence, in all of which, when the facts are conceded or found, the question is one of law. The province of the jury is to find the facts, but the facts being found or conceded, it is the duty of the court to declare the law applicable to such facts. It is under this rule that the sufficiency of the facts in a pleading are tested by a demurrer. *Minnear* v. *Holloway,* 56 Ohio St., 148; *Penn. Co.* v. *Rathgeb,* 32 Ohio St., 63; *Kister* v. *Indianapolis,* 100 Ind., 210; *Henry* v. *The St. L., K. C. & N. Ry. Co.,* 76 Mo., 293.

As the railroad company was under no obligation or duty to fence its road against persons, and as the defect in the fence was not the proximate cause of the injury to the little boy, he had no cause of action against the company, and the errors, if any, in the admission or exclusion of evidence, were immaterial and not prejudicial.

Applying the law as to fences and proximate cause as above laid down, to the petition, it fails to state a cause of action against the railroad company, and taking the defective petition in connection with the facts conceded to have been proved on the trial, and in the absence of a motion to amend, the court of common pleas was clearly right in directing a verdict for the defendant below. The judgment of the circuit court will be reversed, and that of the common pleas affirmed.

*Judgment reversed.*