PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY CO. *v.* THE TOWN OF CROWN POINT.

[No. 17,904.   Filed December 16, 1896.]

MUNICIPAL CORPORATIONS.—*Powers Limited to Those Granted by the Legislature.*—Municipal corporations possess such powers only as are granted by the legislature in express words and those necessarily or fairly implied or incident to the powers expressly granted, and those essential to the declared objects and purposes of the corporation.

SAME.—*Statutes Granting Powers to a Municipality Strictly Construed.*—Any doubt or ambiguity in the terms used by the legislature in granting powers to a municipal corporation is resolved against the corporation.

SAME.—*Ordinances.—When Constitutional.*—An ordinance expressly authorized by specific and definite legislative authority will be upheld unless it conflicts with the constitution; while an ordinance which the municipality seeks to uphold by virtue of its incidental powers, or under a general grant of authority, will be declared invalid, unless it be reasonable, fair and impartial.

SAME.—*Town Ordinance Requiring Railroad to Maintain Crossing Gates.—Statutes Construed.*—Sections 4404 and 4357, Burns' R. S. 1894 (3333 and 3367, R. S. 1881), do not authorize an ordinance to compel a railroad company to keep, at its own expense, a watchman and erect and maintain a gate on each side of the track at each street crossing within the corporate limits of a town.

From the Lake Circuit Court. *Reversed.*

*N. O. Ross* and *J. B. Peterson,* for appellant.

*W. C. McMahan,* for appellee.

MONKS, J.—The question involved in this appeal is as to the power of incorporated towns to compel, by ordinance, a railroad company to keep a watchman

and erect and maintain gates at points where the tracks cross a street, and impose penalties for the failure so to do.

It is the law in this jurisdiction that municipal corporations possess and can exercise such powers only as are granted by the legislature in express words and those necessarily or fairly implied or incident to the powers expressly granted, and those essential to the declared objects and purposes of the corporation.

No incidental powers can be implied except such as are essential to the accomplishment of the purposes of their creation and for their continued existence. *City of Shelbyville* v. *Cleveland, etc., R. W. Co., ante,* 66, and authorities cited; *Champer* v. *City of Greencastle,* 138 Ind. 339, and cases cited; 1 Dillon Munic. Corp., sections 89, 90.

Doubtful claims to power or any doubt or ambiguity in the terms used by the legislature are resolved against the corporation. *Minturn* v. *Larue,* 23 Howard (U. S.) 435; *Bloom* v. *Xenia,* 32 Ohio St. 461; *Ravenna* v. *Pennsylvania Co.,* 45 Ohio St. 118, 12 N. E. 445; Cooley's Const. Lim. 233, 234; 1 Dillon Munic. Corp., sections 89, 90, 91; Tiedeman on Munic. Corp., section 110.

It is also settled law that where the legislature in terms confers upon a municipal corporation the power to pass ordinances of a specified nature and character, and with precision defines the details of the same, and prescribes the penalties that may be imposed, if the power thus granted be not in conflict with the constitution, an ordinance within the powers granted, prescribing penalties within the designated limit, cannot be set aside by the courts because they may deem it unreasonable or against public policy. But where the power to legislate upon a given subject is granted, and the mode of its exercise and the details of such

legislation are not prescribed, then the ordinance passed pursuant thereto must be a reasonable exercise of the power or it will be pronounced invalid.  In other words, an ordinance expressly authorized by specific and definite legislative authority will be upheld unless it conflicts with the constitution, while an ordinance which the municipality seeks to uphold by virtue of its incidental powers, or under a general grant of authority, will be declared invalid, unless it be reasonable, fair and impartial, and not arbitrary or oppressive.  *City of Shelbyville* v. *Cleveland, etc., R. W. Co., supra,* and authorities cited; *Haynes* v. *City of Cape May,* 50 N. J. L. 55, 13 Atl. 231; *Hawes* v. *City of Chicago,* 158 Ill. 653, 30 L. R. A. 225, 42 N. E. 373; *City of Chicago* v. *Rumpff,* 45 Ill. 90, 92 Am. Dec. 196; *Ex parte Chin Yan,* 60 Cal. 78; *Davis* v. *Town of Anita,* 73 Ia. 324, 325, 35 N. W. 244; *Burg* v. *Chicago, etc., R. W. Co.,* 90 Ia. 106, 48 Am. St. 419, 57 N. W. 680; *Myers* v. *Chicago, etc., R. R. Co.,* 57 Ia. 555, 42 Am. Rep. 50, 10 N. W. 896; *Phillips* v. *City of Denver,* 19 Col. 179, 41 Am. St. 230, 34 Pac. 902; *City of St. Paul* v. *Colter,* 12 Minn. 41, 90 Am. Dec. 278; *Evison* v. *Chicago, etc., R. W. Co.,* 45 Minn. 370, 48 N. W. 6; 1 Dillon Munic. Corp. 319, 330; Tiedeman Munic. Corp., section 110; *Robinson* v. *Mayor, etc.,* 34 Am. Dec., note pp. 627, 643.

It is contended by appellee that section 4404 and clauses 4, 6, 9 and 16 of section 4357, Burns' R. S. 1894 (3367 and 3333, R. S. 1881), did grant the power in question.  By section 4404, *supra,* the board of trustees of an incorporated town is given the "exclusive power over the streets, alleys, highways and bridges within the corporate limits of such town."  Said clauses of section 4357, *supra,* are as follows:

"*Fourth.* To declare what shall constitute a

nuisance, and to prevent, abate and remove the same; and to take such other measures for the preservation of the public health as they shall deem necessary.

"*Sixth.*   *   *   *   * to regulate or prohibit the use of firearms, fireworks or other things tending to endanger persons or property; to prevent interference with the free use of the streets and alleys of the town, and to preserve peace and good order and prevent vice and immorality.

"*Ninth.*   To lay out, open, grade and otherwise improve the streets, alleys, sewers, sidewalks and crossings, and keep them in repair and vacate the same.

"*Sixteenth.*   To make and establish such by-laws, ordinances and regulations not repugnant to the law of this state, as may be necessary to carry into effect the provisions of this act.   *   *   *"

The question before us and which we are called upon to decide, is not whether the legislature, in the exercise of its broad police power, should compel railroads to keep watchmen and erect and maintain gates at their own expense at street crossings, nor is it whether the legislature should grant such power to incorporated towns, but it is whether the legislature has granted such power to incorporated towns.

It is clear said sections 4357 (3333) and 4404 (3367), *supra*, do not in express words grant the power to pass the ordinance in question.

Can such power be fairly implied from those expressly granted, or is such power essential to the declared objects or purpose of the corporation? We think not.

It may be admitted that incorporated towns have the power to regulate public travel upon the streets so as to make their use reasonably safe at all times for those who go upon them, and to enact ordinances for the protection of health, life and property.

It is true, that the persons and property of those who attempt to cross a railroad track are subject to risk. The question, however, is not whether the incorporated town has a right to protect its inhabitants or their property, but whether it has the right to compel the railroad company to do so at its own expense. The propositions are essentially different. It is not enough to show that incorporated towns have been given the power to regulate travel upon the streets and to protect life and property. It may be that under the provisions of the statute above set forth, incorporated towns have the power to keep watchmen and erect and maintain gates at points where a railroad crosses the streets of the town, but this, if true, would not uphold the ordinance in question. Under such a power, if it exists, the watchman must be employed and the gates erected and maintained at the expense of the town. To sustain the ordinance it must be shown that they have been empowered to compel railroad companies, at their own expense, to employ a watchman and erect and maintain gates at each street crossing, the agency here invoked to accomplish the object. If the employment of the watchman and erection and maintenance of the gates by the incorporated town would as well accomplish the object, it cannot be said that the power to compel the railroad company to do so is implied from the authority to regulate public travel upon the streets and protect life and property.

A railroad company in crossing the streets is on an equality with the citizen, their rights are mutual. The streets are for public use, and the company has the right to propel its locomotive and cars across them, and is not a wrongdoer in so doing. It is liable in damages to anyone who, without fault on his part, is injured by the negligence of the railroad company at

such crossings. It is clear, therefore, that a railroad company is not guilty of any crime or wrongful act in running cars on its tracks across a street, neither would such an ordinance prevent interference with the free use of the streets and alleys of the town. On the contrary, the use of the streets would not be as free, perhaps, with gates and watchmen as without them.

The provision of clause six, granting the power "to regulate or prohibit the use of firearms or other things tending to endanger persons or property" gives no aid to appellee's contention. If it were admitted that this provision applied to railroads, it would only authorize an ordinance as to the manner in which railroads should manage their trains and property within the limits of the corporation.

There is a wide difference between the power to compel the employment of watchmen and the erection and maintenance of gates, and the power to regulate the speed of cars within the corporate limits of a town. The objects in the latter case is to be attained by the management and use by the company of its machinery, and such regulation relates to how the company shall manage its own property within the corporate limits, while the requirement of gates and watchmen relates to how the company shall compel or induce others upon the streets to regulate themselves and their property when approaching and about to cross its tracks.

Sections 4357 (3333) and 4404 (3367), *supra*, may authorize an ordinance, not unreasonable in its terms, to prevent the standing of cars and other obstructions on railroad tracks at street crossings, so as to obstruct the same, or an ordinance regulating the speed of railroad trains within the corporate limits of a town, but most certainly not an ordinance to compel the rail-

road company to keep, at its own expense, a watchman and erect and maintain a gate on each side of the track at each street crossing. Incorporated cities exercise this power, not by virtue of the control given them by the legislature over the streets and alleys, nor their power to lay out, open and improve streets and alleys, but under clause 42, section 3541, Burns' R. S. 1894 (3106, R. S. 1881). *Kistner* v. *City of Indianapolis*, 100 Ind. 210.

It follows that the court erred in overruling the demurrer to the complaint.

Judgment reversed, with instructions to sustain the demurrer to the complaint and for further proceedings not in conflict with this opinion.