THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS P. DUNN, Respondent, *v.* FRED C. HAM, Commissioner of Public Safety of the City of Albany, Appellant.

1. ALBANY POLICE FORCE — STATIONHOUSE KEEPERS. Stationhouse keepers, although appointed to discharge certain duties connected with and incident to the police government of the city of Albany, were no part of its actual police force as constituted under title 12 of chapter 77 of the Laws of 1870, as amended by chapter 495 of the Laws of 1873, since they were not included in section 9 expressly stating of whom the police force should consist.

2. POWER OF COMMON COUNCIL TO ABOLISH POSITION CONNECTED WITH POLICE FORCE UNDER CHARTER OF CITIES OF THE SECOND CLASS. The position of stationhouse keeper is properly abolished by the common council of the city of Albany in the exercise of legislative power, in good faith and for the purpose of the economical administration of municipal affairs, under the act for the government of cities of the second class (L. 1898, ch. 182, § 177), which provides that the police force shall "as to its component parts remain in each city as now constituted until the same shall be changed by the action of the common council thereof, which has power at all times, by ordinance, to determine the number of the members of the police department and the classes and grades into which they shall be divided, but the number * * * shall not be increased without the approval of the board of estimate and apportionment by a resolution adopted by at least four affirmative votes of said board," since the provision, that the police force as to its component parts shall remain as constituted until changed by the common council, shows a plain recognition

by the legislature that it had conferred upon the common council general legislative power in regard to the police affairs of the municipality and that it possessed the right to change the police force as to its component parts, and the provision as to numbers and grades, instead of being a limitation thereon, is an extension of the power already given and necessarily includes the right to abolish any position which it deemed unnecessary as its power to lessen the number of members is unlimited.

3  POWER OF COMMON COUNCIL NOT AFFECTED BY PROVISIONS RELATING TO REMOVAL AND TENURE OF OFFICE.  The provisions of section 177 are not in conflict with sections 180 and 192 of the act for the government of cities of the second class and section 9 of chapter 77 of the Laws of 1870; the former section relates to the power and duties of the common council in regulating the general affairs of the police department as such; the latter provisions relate only to the removal and the tenure of office of individual members; they do not forbid and have no application to the abolition of a position in good faith in the interest of economy and with no intent to evade them.

*People ex rel. Dunn* v. *Ham,* 57 App. Div. 367, reversed.

(Argued February 26, 1901; decided April 16, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 29, 1901, which affirmed an order of Special Term granting a peremptory writ of mandamus directing the defendant to reinstate the relator in the position of stationhouse keeper in the city of Albany.

The facts, so far as material, are stated in the opinion.

*Arthur L. Andrews* for appellant.  The ordinance was a valid exercise of the legislative power vested in the common council by the charter of cities of the second class.  (L. 1898, ch. 182, art. 2, § 12 ; *Duryee* v. *Mayor, etc.,* 96 N. Y. 477 ; *Rathbone* v. *Wirth,* 150 N. Y. 470.)  The power of the common council to pass the ordinance in question can be exercised as against the members of the department in office January 1, 1900.  (*People ex rel.* v. *Mayor, etc.,* 149 N. Y. 215.)  The legislature may confer upon the common council power to make ordinances which shall have the force and effect of statute law.  (*Ford* v. *N. Y. C. & H. R. R. R. Co.,* 33 App. Div. 474 ; *Matter of G. El. Ry. Co.,* 70 N. Y. 361 ;

1901.]        People ex rel. Dunn v. Ham.        479

N. Y. Rep.]        Opinion of the Court, per Martin, J.

*B. P. Church* v. *City of New York*, 5 Cow. 538; Cooley on Const. Lim. 203 ; Dillon on Mun. Corp. [4th ed.] § 308 ; *Nichols* v. *MacLean*, 101 N. Y. 526 ; *Conner* v. *Mayor, etc.*, 5 N. Y. 285 ; Throop on Public Officers, § 19 ; *People ex rel.* v. *Gilroy*, 60 Hun, 509; *Lethbridge* v. *Mayor, etc.*, 133 N. Y. 237; *People ex rel.* v. *Murray*, 70 N. Y. 521; *Long* v. *Mayor, etc.*, 81 N. Y. 425.) The motive which actuated the passage of an ordinance cannot be inquired into by the judicial branch of the government. (Dillon on Mun. Corp. § 311; Cooley on Const. Lim. 87.)

*James J. Farren* for respondent. The position of station-house keeper in the city of Albany constituted a component part of the police department of said city previous to and on the date when the charter for cities of the second class took effect, and was continued in existence by the provisions of the said charter. (L. 1870, ch. 77, tit. 12, §§ 2, 6, 9; L. 1898, ch. 81, §§ 177, 180, 184.) The common council had no authority to pass an ordinance abolishing the position of stationhouse keeper and thereby legislate relator out of office. (Dillon on Mun. Corp. [4th ed.] §§ 89, 317; *City of Rochester* v. *West*, 29 App. Div. 128; *Lyth* v. *Hingston*, 14 App. Div. 11; *Johnson* v. *H. R. R. R. Co.*, 49 N. Y. 455.) If the common council had the power to pass the ordinance in question under section 177, that power cannot be exercised as against the members of the department in office January 1, 1900. (*People ex rel.* v. *McClave*, 99 N. Y. 85; *Hoey* v. *Gilroy*, 129 N. Y. 132; *Spofford* v. *Pearsall*, 138 N. Y. 57; Dillon on Mun. Corp. [4th ed.] § 89.)

Martin, J.    Whether, for the purpose of an economical administration of municipal affairs, the common council of the city of Albany possessed power to abolish the position of stationhouse keeper, is the only question involved upon this appeal. The Albany police department was organized in 1870 by title 12 of chapter 77 of the Laws of that year, and as amended by chapter 495 of the Laws of 1873 it was in

force when the statute for the government of cities of the second class went into effect. Section 2 of title 12, Laws 1870, provided : " The powers and duties connected with and incident to the police government of the city of Albany shall be  * * * vested in, and exercised by a board of police commissioners, and by a police-force composed of a chief of police, captains of police, sergeants of police, patrolmen of police, stationhouse keepers, and one surgeon of police." Section six of the same title conferred exclusive power upon the police board to appoint one chief, not to exceed seven captains, not to exceed twelve sergeants, and not to exceed one hundred patrolmen, five stationhouse keepers, supernumerary patrolmen not to exceed twenty, one surgeon and not more than two clerks. Section nine explains the meaning of the term police force, by expressly stating of whom it shall consist. It declares that " The said police force shall consist of a chief of police, with so many captains of police, sergeants of police and patrolmen as may be hereinafter especially allowed and provided for."

While section two declares that the powers and duties *connected with and incident* to the police government of the city shall be vested in and exercised by a board of police commissioners, and by a police force composed of the officers and persons mentioned, including stationhouse keepers and a surgeon, yet it is manifest that stationhouse keepers and the surgeon were no part of the actual police force, as section nine specially defines of whom that force shall consist, which includes neither. Although stationhouse keepers as well as the surgeon of police were doubtless appointed to discharge certain duties connected with and incident to the police government, yet they were not included in, nor did they form a part of, the police force of the city as defined by the statute. Hence, so far as the decisions of the courts below were based upon the theory that stationhouse keepers were a part of the police force, they cannot be upheld.

The position of stationhouse keeper was abolished after the passage of the act for the government of cities of the second

class, which must be considered in determining the power of the common council to abolish the place. The act of 1898 (Ch. 182) effected a repeal of all statutes and ordinances which were inconsistent with its provisions. (§ 482.) It conferred all the legislative power of the city upon its common council, to which it gave authority to enact ordinances, not inconsistent with the laws of the state, for the government of the city, the management of its business, the preservation of good order, peace and health, the safety and welfare of its inhabitants, and the protection and security of their property. (§ 12.) The evident purpose of that section was to confer upon the common council entire legislative authority as to matters relating to the municipal government, except as limited by that statute and others not inconsistent with its provisions. This is clearly indicated by the act itself, and was plainly avowed by the commission which reported it to the legislature. (Senate Documents, 1896, vol. 5, No. 24.) That the legislature might have passed an act abolishing the office of stationhouse keepers and otherwise regulating and affecting the police government of the city, cannot be questioned. Instead of passing such an act, it conferred upon the common councils of cities of the second class general power to enact ordinances for the protection and security of property, the preservation of good order, and for the safety and welfare of their inhabitants, which plainly includes the regulation of the police and police power of such cities. The legislative power thus conferred is unlimited except by the provisions of existing laws. Hence, the common council possessed the power to abolish any position or office it deemed unnecessary which was connected with or incident to the police government of the city, unless forbidden by that act or some other statute then in force.

It is not pretended that the legislation of the common council by which the office under consideration was abolished was in conflict with any statute, unless with the act of 1870 and the act in relation to the government of cities of the second class. Under the statute of 1870 no member of the police force could be removed except upon a hearing and after writ-

ten charges had been preferred. (§ 9.) Section 192 of the act of 1898 provides that "All officers and members of the police department, when this act takes effect, shall remain and continue in their respective positions until their positions shall become vacant by death, resignation or by removal under procedure hereinbefore set forth," and section 180 declares that "All the members of the police force, subject to the power of removal hereinafter specified, shall hold their respective offices during good behavior, or until by age or disease they become permanently incapacitated to discharge their duties."

Obviously under the provisions of the statute of 1898, neither the common council nor any officer of the municipality could remove any individual member of the police force without preferring written charges and after a hearing thereon, when its or his purpose was simply to dismiss one member and appoint another in his place. Indeed, the powers conferred upon the common council being legislative only, it could not discharge, remove or appoint any member of the police force or the incumbent of any position connected with or incident to the police government, as the executive and administrative powers of the municipality are conferred upon other officers and instrumentalities. But where its purpose was to abolish a position in good faith, in the interest of economy and not to evade the statute, another question is presented that is not controlled by the provisions to which we have referred. If the position of stationhouse keeper was abolished for good and sufficient reasons, the action of the common council might well be justified upon the ground that it was not the intent of these statutes to confer upon the incumbent a life tenure in such a position, when, upon grounds of economy, or for other proper reasons, the position was in good faith abolished by the legislative branch of the municipal government. (*People ex rel. Corrigan* v. *Mayor, etc., of Brooklyn,* 149 N. Y. 215.)

In this case, however, we are not compelled to rely upon that principle alone to sustain the action of the common council, as the legislature has in terms provided : "The police

force shall, as to its component parts, remain in each city as now constituted until the same shall be changed by the action of the common council thereof, which has power, at all times, by ordinance, to determine the number of the members of the police department, and the classes or grades into which they shall be divided, but the number of members of the police department shall not be increased without the approval of the board of estimate and apportionment by a resolution adopted by at least four affirmative votes of said board." (§ 177.) The provision that the police force, as to its component parts, shall remain as constituted when the act took effect until changed by the common council shows a plain recognition by the legislature that it had conferred upon the common council general legislative power in regard to the police affairs of the municipality and that it possessed the right to change the police force as to its component parts. This is necessarily implied from the language employed. The period during which the police force as to its component parts was to remain as constituted when the act of 1898 went into effect extended only to a time when it should be changed by the action of the common council. The evident purpose of this provision was to prevent any such change until the common council should act upon the question and to confer upon that body power to make such changes as it should deem proper and for the good of the service.

But it is said that that power is limited by the remainder of the sentence, which in effect provides that the common council has at all times, by ordinance, the power to determine the number of members of the police department and the classes or grades into which they shall be divided. We find in this provision no restriction upon the power of the common council to change the police force as to its component parts, but we think it is to be regarded as an extension of the power already given by expressly conferring upon the common council the right to determine the number of the members of the police department and the classes or grades into which they shall be divided. Therefore, it is evident that the

common council had the power to abolish any unnecessary position connected with or incident to the police government. If it were conceded, which it is not, that the legislature did not intend to confer upon the common council the power to change the component parts of the police force, still, as it has given it the express power, at all times, to determine the number of the members of the police department and the classes or grades into which they shall be divided, it is obvious that that power must include the right to abolish any position which it deemed unnecessary, as its power to lessen the number of members is unlimited.

When the statute of 1898, which is not a special but a general act applicable to all cities of the second class in the state, is considered in the light of the general purpose it was intended to accomplish, it becomes obvious that section one hundred and seventy-seven in no way relates to individual members of the police department, and that it has no application to and is not in conflict with the provisions relating to the removal or the tenure of office of such individual members. It relates to the power of the common council to regulate generally the component parts of the police department; to determine the number of members of that department and the classes or grades into which they shall be divided, and prohibits any change thereof by any other officer or authority. In other words, the statutes of 1870 and 1898, which are relied upon by the respondent, relate only to removal or the tenure of office of individual members, while section one hundred and seventy-seven relates to the powers and duties of the common council in regulating the general affairs of the police department as such. It is to be remembered that in this case no attempt was made by the common council or by the commissioner of public safety to remove the stationhouse keepers or to diminish their tenure of office, but it abolished the office in the interest of economy and to lessen the expenses of the city government. That its action in this respect was not controlled by or in conflict with any of the statutes upon which the respondent relies is

manifest. If the common council had attempted to remove individual members of the force, or to abolish the offices of any branch of the police department in bad faith and for the purpose of removing the incumbents and appointing others in their places, it may well be that the statutes relied upon would prevent such action upon its part. But that is not this case, as here it must be assumed that the office was abolished in good faith, for proper purposes, and without any attempt to evade the statutes relied upon by the respondent.

Under these circumstances we think it is clear that the courts below erred in granting and in sustaining a mandamus compelling the appellant to reinstate the relator in the position of stationhouse keeper, and that the order of both the Appellate Division and Special Term should be reversed and the writ set aside and vacated, with costs to the appellant.

Parker, Ch. J., O'Brien, Bartlett, Haight, Vann and Landon, JJ., concur.

Ordered accordingly.