when he would be able to do work of any kind. The doctor says:

"I have never seen the identical case like this."

We have not considered it necessary to review all of the testimony, because much of it relates to unimportant details' that are of little aid to the court in determining the real issue in the case, viz. defendants' liability. In summing up the facts it is shown that plaintiff was not negligent or at fault, and that he is totally disabled to do work of a reasonable character. It appears with reasonable certainty that, whatever ailments the plaintiff may have had prior to November 19, 1918, his earning capacity and his ability to render efficient service as a mechanic and machinist was not appreciably impaired thereby. It does not appear that the injury to the finger alone could have caused the displacement of the shoulder blade and the serious affliction which the specialists have characterized as "winging," but the fact remains that this result followed in perfect sequence the injury, the injection of the anti-tetanic serum, the exposure to cold and dampness, and .the performance of manual labor at the time and under the conditions shown to exist, and it is not denied that the work was performed over the protest of the plaintiff, at the command of the employer, who, himself, was fully cognizant of plaintiff's injury, the injection of the serum, and of the weather conditions.

In disposing of the defense in the Behan Case this court said:

"There is scientific evidence in the record that the plaintiff was, after the accident and at the time of the trial, afflicted with locomotoraxia—what physicians call tabes dorsalis—and that an accident such as the one on which this suit is founded could not, of itself, have produced that disability. But it also appears from the expert testimony that the one and only disease that does cause locomotor-ataxia can remain dormant and undiscovered in the human system a very long time; that

there have been cases where the disease did not assert itself within 20 years from the time of infection. There is no proof in this case that the plaintiff would be now or ever disabled by locomotoraxia if the accident he complains of had not happened. On the contrary, until the accident he was apparently in ordinary sound health, attending to his daily occupations, unconscious of being diseased, working regularly, earning large wages, and supporting his wife and daughter."

In the present case there is no proof in the record that the plaintiff would be now or would ever be disabled by neuritis or by "winging" if the accident he complains of had not happened. On the contrary, until the accident he was apparently in sound health, attending to his daily occupations as a mechanic and machinist without inconvenience, and he was working regularly and earning good wages. The facts bring this case clearly within the ruling announced in Behan v. John B. Honor Co., Ltd., 143 La. 348, 78 South. 589, L. R. A. 1918F, 862. The judgment of the civil district court is correct.

For these reasons the judgment appealed from is affirmed, at appellants' cost.

Rehearing refused by Division B, composed of Justices DAWKINS, LAND, and LECHE.

---

(98 South. 259)

No. 25943.

### MONTGOMERY et al. v. CITY OF LAFAYETTE et al.

(Nov. 12, 1923. Rehearing Denied by Division B, Dec. 10, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Municipal corporations** $\Longleftrightarrow$950—**Power to fund excess revenues into bonds.**

Under Act No. 32 of 1902, § 2, providing for the dedication of excess future revenues, as amended by Act No. 128 of 1910, and under Const. 1921, art. 14, § 14 (e), relating to the same subject and Act No. 40 of 1922, §§ 4,

5, and 6, authorizing municipalities to fund into bonds the avails or residue of their general alimony tax, the excess revenues of a municipality for subsequent years, regardless of their source, may be dedicated by agreement, but only the avails of the general alimony tax can be funded into bonds.

**2. Municipal corporations ⏎57—Powers enumerated.**

A municipal corporation may exercise only powers granted in express words, those necessarily or fairly implied in or incident to the powers expressly granted, and those essential and indispensable to the declared object and purpose of the corporation.

**3. Municipal corporations ⏎58—Doubts concerning power resolved against municipality.**

All fair and reasonable doubts concerning the existence of a power are to be resolved against a municipal corporation, and the power denied.

**4. Municipal corporations ⏎1000(5)—Error or fraud in estimate of revenues admissible in suit to restrain bond issue when alleged.**

If a petition in taxpayer's suit to annul a resolution of a city for funding the excess revenues into bonds and to enjoin the city from issuing such bonds alleges fraud, unfairness, error, or exaggerations in the estimates of excess revenues, evidence is admissible to establish the fact.

**5. Municipal corporations ⏎950—Estimated future profits from water and light plants held not revenue reasonably certain of collection legally justifying bond issue.**

Profits from the future operation of a city water and light plant *held* speculative and uncertain, depending on various conditions and contingencies, and not sources of revenue reasonably certain of collection legally, or available sources of revenue beyond a reasonable doubt, within Act No. 40, of 1922, § 6, as to issuance of bonds.

**6. Municipal corporations ⏎950—In funding excess future revenues into bonds surplus from preceding years cannot be included.**

In funding the excess revenues of subsequent years into bonds, under Act No. 40 of 1922, the governing authority of a parish or city has no discretion to include in its estimate of such revenues a surplus which has come over from a preceding year, but it must predicate the future revenues on the estimated surplus of the particular year in which the excess revenue is funded into bonds.

Appeal from Eighteenth Judicial District Court, Parish of Lafayette; William Campbell, Judge.

Suit by W. A. Montgomery and others against the City of La Fayette and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

George P. Lessley, City Atty., of La Fayette, John R. Hunter, of Alexandria, and Kennedy & Roos, of La Fayette, for appellants.

Mouton & DeBaillon, of La Fayette, for appellees.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

BRUNOT, J. This is a suit by resident taxpayers of the city of La Fayette to annul and avoid a resolution of the board of trustees of that city providing for the funding of the excess revenues of the city into bonds, and to enjoin the city and the officials thereof from issuing and selling said bonds.

The defendants filed exceptions of no cause and no right of action. The exceptions were heard and overruled, whereupon defendants answered, and, after trial on the merits, the court rendered judgment annulling and avoiding the resolution of the board of trustees providing for the issuance of the bonds and granting the injunction as prayed for in the petition.

From this judgment the defendants have appealed, and L. E. French & Co. and M. W. Elkins & Co., the successful bidders for said bonds, also obtained the requisite order and perfected a supplemental appeal.

Section 2 of Act No. 32 of 1902 provides for the dedication of the *excess future revenues* of parishes and municipalities, as follows:

"That the revenues of the several parishes and municipal corporations of this state, of each year, shall be dedicated as follows: First, all statutory charges shall be paid from the re-

spective funds upon which they are imposed; second, all charges for services rendered annually under time contracts; third, all necessary usual charges provided for by ordinance or resolution. Any excess revenue above statutory, necessary and usual charges may be applied to the payments of amounts due and unpaid out of the revenues of former years. Police juries and municipal corporations shall also have authority to make, in any year, agreements or contracts dedicating in whole or in part the excess of annual revenues of *subsequent years* above statutory, necessary and usual charges, provided that no such agreement or contract shall have any longer terms fixed for payments than ten years from the date of the agreement or contract, and provided further, that no dedication of future revenues shall be made which, alone, or with other prior dedications in force, shall exceed the estimated excess of revenues over the statutory, necessary and usual charges of the year in which the agreement or contract is made." (Italics ours).

Act No. 128 of 1910, amending section 2 of Act No. 32 of 1902, re-enacts section 2 of Act No. 32 of 1902 in its entirety. The amending act merely includes in the section a provision affecting the city of New Orleans, and the following added proviso:

"Provided further, that nothing in this Act shall be taken or construed to prohibit police juries or municipal corporations from providing by ordinance or resolution for the expenditure of funds derived from miscellaneous or contingent sources actually collected, subject to such dedication of such funds as may be established by existing laws."

Article 14, § 14 (e) of the Constitution of 1921 is as follows:

"The governing authorities of municipal corporations, for the purpose of paving, improving or maintaining streets or alleys and for all municipal improvements, including public parks, after making provision for the payment of all statutory and ordinary charges, may fund into bonds running for a period not to exceed ten years, and bearing interest at a rate not to exceed six per centum per annum, which bonds shall not be sold for less than par, the avails or residue of the tax authorized by this Constitution."

Section 4 of Act No. 40 of 1922, provides that:

"The governing authorities of municipal corporations, including cities, towns and villages, may fund into bonds of the municipal corporation the avails or residue of their general alimony tax," etc.

Section 5 of the act provides for the resolution and notice of intention to fund the excess revenues of the city into bonds and section 6 of the act provides that the governing authorities shall spread upon the minutes a sworn itemized statement of the—

"statutory and ordinary charges for the current year, and all of its obligations, contractual or otherwise, omitting therefrom any debt secured by special taxes, and none other. * * * It shall likewise spread upon its minutes an itemized statement of its current revenues which show the yearly amount of taxes to be realized, based upon the assessed valuation of the taxable property of such political subdivision to be ascertained by the last assessment for parish or municipal purposes previous to issuing such bonds, and also such other available sources of revenue reasonably certain of collection legally," etc.

Act No. 32 of 1902 as amended and re-enacted by Act No. 128 of 1910 authorizes the governing authorities of cities to dedicate for specific purposes the excess annual revenues of *subsequent years*, and article 14, § 14 (e), of the Constitution of 1921, and Act No. 40 of 1922, authorize municipalities to fund into bonds the avails or residue of the general alimony tax of the city.

In the exercise of the power conferred by these acts the discretion of the governing authorities of parishes and cities is not absolute. The requirements of the statutes must be strictly complied with. Tremont Lumber Co. v. Police Jury of Jackson Parish, 144 La. 1040, 81 South. 703.

To come within the statutes, provision must be first made for the payment of all statutory and ordinary charges and obligations of the municipality, except debts secured by special taxes, and the remainder of

the revenues, derived from the alimony tax, for subsequent years, in excess of these requirements, is the residue which may be funded into bonds, for the wording of Act No. 40 of 1922 (section 4) is as follows: "May fund into bonds of the municipal corporation the avails or residue of *their general alimony tax*." (Italics ours.)

[1] If a strict construction of the quoted acts is proper, and we think it is, the excess revenues of the municipality, for subsequent years, regardless of the source from which they come, may be dedicated by agreement or contract; but, only the avails or residue of the *general alimony tax* can be funded into bonds.

[2] A municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; those necessarily or fairly implied in or incident to the powers expressly granted; and, third, those essential to the declared object and purpose of the corporation, not simply convenient but indispensable. City of Independence v. Cleveland, 167 Mo. 384, 67 S. W. 216; City of Winchester v. Redmond, 93 Va. 711, 25 S. E. 1001, 57 Am. St. Rep. 822; Christie v. Malden, 23 W. Va. 667; Gambill v. Endrich Bros., 143 Ala. 506, 39 South. 297; Porter v. Vinzant, 49 Fla. 213, 38 South. 607, 111 Am. St. Rep. 93; McAllen v. Hamblin, 129 Iowa, 329, 105 N. W. 593, 5 L. R. A. (N. S.) 434, 6 Ann. Cas. 980; Johnston v. Louisville, 74 Ky. (11 Bush) 527; Joplin v. Leckie, 78 Mo. App. 8; Town of Kirkwood v. Meramec Highlands Co., 94 Mo. App. 637, 68 S. W. 761; Donable's Adm'r v. Town of Harrisonburg, 104 Va. 533, 52 S. E. 174, 2 L. R. A. (N. S.) 910, 113 Am. St. Rep. 1056, 7 Ann. Cas. 519; Wistar v. City of Philadelphia, 86 Pa. 217; Scott v. City of Laporte, 162 Ind. 34, 68 N. E. 278, 69 N. E. 675; Pittsburgh, C. C. & St. L. R. Co. v. Crown Point, 146 Ind. 421, 45 N. E. 587, 35 L. R. A. 684.

[3] All fair and reasonable doubts concerning the existence of a power are to be resolved against a municipal corporation, and the power denied. City of Savanna v. Robinson, 81 Ill. App. 471; Thomas v. City of Grand Junction, 13 Colo. App. 80, 56 Pac. 665; State v. Butler, 178 Mo. 272, 77 S. W. 560; People v. Ham, 32 Misc. Rep. 517, 66 N. Y. Supp. 264; People v. Ham, 166 N. Y. 477, 60 N. E. 191; Los Angeles v. Los Angeles City Water Co., 177 U. S. 558, 20 Sup. Ct. 736, 44 L. Ed. 886; Pittsburgh, C. C. & St. Louis R. Co. v. Crown Point, 146 Ind. 421, 45 N. E. 587, 35 L. R. A. 684; Indianapolis v. Indianapolis Union R. Co., 160 Ind. 45, 66 N. E. 163, 60 L. R. A. 831.

[4] If the petition alleges fraud, unfairness, error, or exaggeration in the budget of estimate of excess revenues over the statutory, necessary, and usual charges of the municipality, evidence is admissible to establish the fact. In the case of Roth v. Town of Thibodaux, 137 La. 210, 68 South. 412, the evidence tendered was excluded because the petition, unlike the petition in this case, did not contain allegations which justified its admission. In this case the district judge admitted the testimony over defendant's objection, and the ruling is correct.

The excess revenues shown on the sworn itemized statement of the trustee of finance of the city of La Fayette is the total excess revenues from all sources, including water and light rentals, and a most important issue in this case, if a strict construction of the statutes be not adhered to, is whether the estimated net profits from water and light rentals is a source of revenue reasonably certain of collection legally.

The courts have had occasion to consider what are "available sources of revenue reasonably certain of collection legally," and they have interpreted the phrase to mean "available sources of revenue beyond reasonable doubt."

From the testimony of Mr. L. G. Menuet, a public accountant, who has examined the books of the city yearly from 1915 to 1921, both inclusive, it appears that if the costs of additions and improvements are deducted the operation of the water and light plant shows net revenues of $607.13 for 1915; a net loss of $1,029.77 for 1916; a net loss of $1,806.15 for 1917; a net loss of $13,250.57 for 1918; a net loss of $1,455.78 for 1919; a net loss of $26,975.28 for 1920; and net revenues of $8,884.94 for 1921.

Plaintiffs contend, and the record justifies the contention, that the estimated profits for the year 1922 appearing in the sworn statement of the trustee of finance is erroneous, because the water and light plant, at the time the statement was made, had no funds to its credit; the profits from its operation, if any, having been previously applied to the payment to the city of previous losses sustained by it. Testimony of Louis Chopin, Transcript, p. 125.

[5] The judge of the lower court did not give written reasons for his judgment, and we do not know upon what ground his conclusions are based, but we assume that, like ourselves, he reached the conclusion that upon the showing made in this record the estimated net profits from the future operation of defendants' water and light plant are speculative and uncertain, depending upon varying conditions and contingencies; they are not sources of revenue reasonably certain of collection legally, or available sources of revenue beyond a reasonable doubt.

[6] He may also, like ourselves, have reached the conclusion that in funding the excess revenues of *subsequent years* into bonds the governing authority of a parish or city has no discretion to include in its estimate of such revenues a surplus which has come over from a preceding year. It must predicate the future revenues upon the estimated surplus of the particular year in which the excess revenue is funded into bonds. Williams v. Police Jury of Morehouse Parish, 135 La. 445, 65 South. 604.

As the validity of the resolution adopted by the board of trustees of the city of La Fayette on August 23, 1922, and the resolutions and ordinances of said board adopted September 25, 1922, approving the sworn statement of the trustee of finance and authorizing the issuance of $144,000 of bonds, payable in 10 years, with 6 per cent. per annum interest, interest payable semiannually on the 1st days of March and September, and dedicating three mills of the seven mills alimony tax of the city, upon the assessed valuation of all taxable property situated therein, to meet the payment of the bonds in principal and interest as they fall due, *is contingent upon the legal right of the city to include in its estimated net revenue, present and future, its water and light rentals as sources of revenue reasonably certain of collection legally, and as this right,* for the reasons herein, *is now denied,* it follows that the judgment of the lower court is correct, and it is therefore affirmed at appellants' cost.

Rehearing refused by Division B, composed of Justices DAWKINS, LAND, and LECHE.