ROGERS, Justice.
 

 Plaintiffs are residents and two of the largest taxpayers of the city of Minden. They brought this suit to annul an ordinance adopted by the board of aldermen of the city providing for the issuing and negotiating of “sewerage extension bonds” in the principal sum of $65,000, to be secured by the avails and residue of the alimony tax authorized under the Constitution, and to enjoin the municipality and its officials from issuing the bonds. The court below rendered a judgment in plaintiff’s favor as prayed for, and the defendant municipality has appealed.
 

 The ordinance of the defendant municipality was adopted, over plaintiffs’ written protest, on September 4, 1934, and was published in the local newspaper on September 11, 1934: This suit was filed on September 15, 1934.
 

 The municipal ordinance, according to its terms, was adopted under the authority of paragraph (e) section 14 of article 14 of the Constitution of 1921 and the provisions of Act No. 40 of 1922.
 

 Article 14, § 14 (e), of the Constitution of 1921, reads as follows:
 

 “The governing authorities of municipal corporations, for the purpose of paving, improving or maintaining streets or alleys and for all municipal improvements, including public parks, after making provision for the payment of all statutory and ordinary charges, may fund into bonds running for a period not to exceed ten years, and bearing interest at a rate not to exceed six per centum per annum, which bonds shall not be sold for less than par, the avails or residue of the tax authorized by this Constitution.”
 

 Section 4 of Act No. 40 of 1922 provides that:
 

 “The governing authorities of municipal corporations, including cities, towns and villages, may fund into bonds of the municipal corporation the avails or residue of their general alimony tax,” etc.
 

 Section 5 of the statute provides for the resolution and publication of notice of in
 
 *102
 
 tention to issue the bonds and the purpose for which they are to be issued. Section 6 provides that the governing authority of the political subdivision shall meet as set forth in the notice and shall spread upon its minutes a sworn itemized statement of its statutory and ordinary charges for the current year and all its contractual and other obligations, except obligations secured by special taxation ; also a sworn itemized statement of its current revenues which show the yearly amount of taxes to be collected, based upon the valuation of the taxable property to be ascertained by the last assessment for parish or municipal purposes previous to issuing the bonds, and such other available sources of revenue reasonably certain of collection legally. Section 29 defines the term “general alimony tax” as used in the statute as meaning the parish or municipal tax authorized by sections 11 and 12 of article 14 of the Constitution of 1921 and subsequent amendments.
 

 Section 12 of article 14 of the Constitution of 1921 declares that: “Except as otherwise provided in this Constitution, no municipal tax, for all purposes whatsoever, shall exceed, in any one year, seven mills on the dollar of assessed valuationetc.
 

 The ordinance of the defendant municipality provides for a bond issue of $65,000 to run for a period of nine years, payable in annual installments, with 6 per cent, per annum interest payable annually, and levies an annual tax of 3% mills out of the general alimony tax of 7 mills to be dedicated and set aside as a trust fund for the purpose of paying the interest and retiring the bonds.
 

 The ordinance shows that the assessed valuation of property in' the city of Minden for the year 1933 was $3,121,995, and declares that “the taxes collected and to be collected thereon for the year 1933 and other net resources show a surplus of $2,409.15.” But this declaration is entirely too optimistic. The record discloses a deficit rather than a surplus in the city’s finances.
 

 The sworn statement of the obligations of the defendant municipality, including all liabilities not secured by special taxes, of date August 31, 1934, which was spread on the minutes of the board of aldermen, discloses a total indebtedness on bonds, certificates, notes, and unpaid current bills of $21,112.50. The same statement shows resources total-ling $9,594.56 with which to pay these obligations. Among the items listed as resources is the sum of $3,764 contained in a frozen bank account; $3,323.32 as the pro rata due the general fund out of the uncollected taxes for the years 1931, 1932, and 1933; $700 (estimated) for uncollected licenses of 1934; and $400 (estimated) from uncollected fines. The statement also shows an estimated net profit from the operation of the municipal light and water plant of $15,000, and an estimated expense of- $16,000 for operating the city for the months of September, October, November, and December, 1931.
 

 The budget of the city for the year 1934, which was adopted December 6, 1933, shows a total for estimated receipts of $44,365, and an estimated expense of a like amount. Included in the estimated receipts are licenses, $4,000; fines, $1,000; and revenues from the light and water plant of $30,000.
 

 On an assessment of $3,121,000, the general alimony tax of 7 mills is capable of yielding annually only $21,847, or less than one-half
 
 *104
 
 of the, annual operating expenses of the defendant municipality. And the tax itself is not certain of collection, as is shown by the sworn statement which discloses that there are uncollected taxes of $13,000 for the years 1931, 1932, and 1933. To make up the deficit annually arising from insufficient tax revenues, the municipal authorities, in order to meet the current expenses of the city, are compelled to use the revenues derived from the operation of the light and water plant.
 

 The record shows that, after using the revenues from the light and water plant for the payment of its current expenses, the municipality continues to incur debt, and that one of the local banks holds the municipality’s obligations evidencing an indebtedness of $8,-000, which was contracted within the last two years. And the bookkeeper of the city, who apparently is the only person familiar with its financial condition, testified there is no margin in the city’s revenues for the payment of its contractual obligations.
 

 In the case of Montgomery v. City of Lafayette, 154 La. 822, 98 So. 259, this court had occasion to pass on the right of a municipality in issuing bonds under Act No. 40 of 1922 to include in the estimate of its revenues the profits derived from the operation of a light and water plant. The court held that a municipality had not that right; that profits from the future operation of a city water and light plant are speculative and uncertain, depending
 
 on
 
 various conditions and contingencies, and are not sources of revenue reasonably certain of collection legally or available sources of revenue beyond a reasonable doubt within the terms of section 6 of Act No, 40 of 1922. We think that case is decisive of the issue presented here. There the right was denied the city of Lafayette to issue bonds, notwithstanding that its financial statement showed excess revenues from all sources. Here there are no excess revenues from any source, and there is actually due the city for uncollected light and water rents the sum of $10,000.
 

 For the reasons assigned, the judgment appealed from is affirmed.