GUIDRY, Judge.
Defendants, the City of Opelousas, May- or John W. Joseph, Aldermen Dale Peffer-korn, LeRoy Payne and Ceasar Veazie, Jr. (hereafter collectively referred to as City, appellants or defendants), along with inter-venor, Central Louisiana Electric Company, Inc. (CLECO), appeal a judgment of the district court granting plaintiff, Southwest Louisiana Electric Membership Corporation’s (SLEMCO), motion for summary judgment and denying defendants’ motion for summary judgment.
This suit arises as the result of an election called by the City to secure authority to grant a franchise to operate the City’s electric distribution system pursuant to La. R.S. 33:4341 et seq. Originally three utility companies submitted competing proposals for the utility franchise: SLEMCO (the then current franchise holder), CLECO and the City of Lafayette Utilities System (Lafayette).
Pursuant to La.R.S. 33:4341 et seq., the City adopted a resolution calling for a special election to be held October 7, 1989 on the proposals submitted. Lafayette withdrew from consideration before the election took place.
The CLECO and SLEMCO proposals appeared on the same ballot as separate propositions (See Appendix). A total of 7,057 voters participated in the election, which also included a number of Constitutional Amendments. The pertinent election results were as follows:
CLECO Proposition:
For 3,387
Against 2,323
SLEMCO Proposition:
For 3,296
Against 2,458
*1320 The following “guidelines” had been adopted by the City prior to the election:
“1. No proposal may be accepted by this Mayor and Board of Aldermen unless same has received a favorable vote of a majority in number of those persons voting at said election.
2. If two or more proposals receive a majority vote in favor of acceptance, the Mayor and Board of Aldermen shall accept the proposal receiving the highest favorable vote, it being provided, however, that in case of a tie vote in the foregoing instance, the Mayor and Board of Aldermen shall decide upon the proposal that is to be accepted.” (Emphasis ours)
Under paragraph two of the guidelines, the City declared CLECO to be the winner of the election and indicated its intention to contract with CLECO pursuant to the secured authority. SLEMCO filed suit to enjoin and/or vacate the City’s action. As aforementioned, the trial court rendered judgment in favor of SLEMCO enjoining the City from entering into a contract with CLECO.
SLEMCO urged at the trial level that, in view of the fact that 7,057 voters participated in the election, “a majority in number of those persons voting” at the election would equal 3,529 and as neither CLECO nor SLEMCO received at least that number of votes, no proposal could be accepted either under the guidelines or under La. R.S. 33:4341, which states in pertinent part:
“Any municipality, the city of New Orleans excepted, or any parish or any other political subdivision or taxing district authorized to issue bonds under Article VI, Section 37, of the Constitution of Louisiana, all of which are hereinafter in this Subpart referred to as ‘municipality’ or ‘parish’, may sell or lease any revenue producing properties owned by them, including all proper franchises to operate the same not to exceed sixty years, provided the governing authorities have been first authorized to do so by a vote of a majority of the qualified electors, voting at an election held for that purpose as herein directed; ...”
The trial court, although disagreeing with SLEMCO’s contention (see 5 below), nonetheless granted SLEMCO’s motion for summary judgment making the following findings:
“1) That a municipality, such as Opelou-sas, is a creation of the state and has only such power or authority as is delegated to it by the legislature or the constitution. (See Constitution of 1985, Art. VI, Section 7. Also note the many cases annotated at key numbers 54, 57, and 64 under the topic ‘Municipal Corporations’ in West’s current digest.)
2) That statutes granting powers to municipal corporations must be strictly construed and any reasonable doubt as to the existence of a power must be resolved against the municipality. Montgomery v. City of Lafayette (1924), 154 La. 822, 98 So. 259; City of Shreveport v. Southwestern Gas & Electric Co. (1922), 151 La. 864, 92 So. 365. See also annotations under No. 17, ‘Legislative Control — In General’ under R.S. 33:361.
3) That R.S. 33:4341 is such a grant of authority to municipalities; the city, by resolution, did proceed under that authority.
4) That the statute is a grant of power expressly conditioned on an approval by ‘... a majority of the qualified electors voting at an election held for such pur-pose_’■
5) That under the jurisprudence cited by CLECO’s counsel, the term ‘majority’ must be taken to mean 50 percent plus 1 of those who voted on the two propositions offered, regardless of whether the votes were affirmative or negative and without regard to the votes cast on other questions, such as the constitutional amendments.
6) That for the city to exercise its authority under the statute, it must be shown that the proposal received a majority vote of those voting on the two propositions.
7) That it is impossible to determine the number of votes cast on the two propositions.
*1321 8) That the authority granted being dependent upon a mathematical showing, there is no room for discretion in city officials or a necessity of deference by the courts to action of a governmental agency.
9) That the assertions hereinabove under numbers 1 and 2 are uniquely applicable here because the condition precedent to the city’s authority is for the benefit of the public.
10) That there is no way a municipality or its officials acting alone or with parties in interest can change the statutory requirement that the proposition receive a majority vote.
11) That this does not involve the manner in which a municipality exercises authority; it involves a question of whether there was any authority at all.
12) That, accordingly, the condition precedent (majority votes) not being shown, the city had no authority to make a franchise award or lease and its actions were ultra vires.” (Emphasis ours)
On appeal, CLECO and the City urge error in the trial court's decision arguing that it is not the aggregate number of people who voted on the two propositions that determines what a majority vote on each proposition would be, rather they contend that such determination is made by considering only the number of qualified electors who voted on each separate proposition. Appellants then urge that since 5,710 electors cast ballots on the CLECO proposition (3,387 For and 2,323 Against), it necessarily follows that the authority sought by the governing authority under R.S. 33:4341 to contract with CLECO was granted by a majority in number of the qualified electors voting on that issue (Vh x 5710 = 2855). For the reasons which follow, we find merit in appellants’ contention and reverse.
The learned trial judge considered the two propositions as one proposition in reaching the conclusion that it was impossible to determine with mathematical certainty what would constitute a majority vote on the proposition. If the two propositions, separately stated on the ballot, are considered as one proposition, then we would agree with the trial court that a determination cannot be made as to-the numerical majority with certainty.[1] On the other hand, if the propositions are considered separately, it is obvious that each proposition received a favorable vote of a majority in number of the qualified electors voting on each separate proposal. Presumably, in concluding that majority means “50 percent plus 1 of those who voted on the two propositions offered, the trial court viewed the called election as one where the electorate was called upon to decide which of the two propositions should be accepted. We conclude that the mathematical majority is arrived at by considering the proposals separately and the trial court erred in deciding otherwise.
It is settled that a “majority of qualified electors” means a majority of the qualified electors who choose to exercise their right to vote on an issue. Dresser v. Recreation and Park Commission of Parish of East Baton Rouge, 34 So.2d 384 (La.1948); State v. Thurston, 28 So.2d 274 (La.1946); Citizens and Taxpayers of DeSoto Parish v. Williams, 49 La.Ann. 422, 21 So. 647 (La.1897); State ex rel. Fleury v. Conway, 166 La. 840, 118 So. 39 (La.1928). Considering this established principle, irrespective of the number of electors who participated in all facets of the election, the mathematical majority, as to each separate proposal, is determined by the number of votes cast on each.
R.S. 33:4341 et seq. grants authority to municipalities to sell or lease any revenue producing property owned by it, including *1322 franchises to operate same, subject only to such authority being confirmed by a vote of a majority in number of the qualified electors, voting at an election held for that purpose. The cited statute grants no authority to the qualified electors of the governmental subdivision to choose between competing prospective vendees or lessees. Rather, selection among competitors is reserved to the governmental authority subject only to confirmation of such authority by a majority of the electors at an election called for that purpose.
The ballot (Appendix) lists the propositions separately. The ballot form did not purport to allow the voters a choice between the competing proposals, which is the ultimate effect when the proposals are considered as one. Rather, each elector was permitted to vote “Yes” or “No” on each proposal.
Although arguably R.S. 33:4341 et seq., by its terms, seems to contemplate voter approval or disapproval of only one proposal at a time, there is nothing in the statute which would serve to prohibit a municipality from securing voter approval of competing proposals, as was done in the instant case, with the City Fathers thereafter accepting the proposal which, in their judgment, best serves the interest of the municipality. This procedure works no injustice on the electorate as each elector is free to vote for or against each separate proposition with a possible result of both propositions failing; one passing and one failing; or, both receiving voter approval. In sum, we conclude that the proposals in question must be considered as separate proposals for the purpose of determining the mathematical majority.
In the instant case, considering the proposals separately, it is obvious that each proposal was approved by a vote of a majority in number of the qualified electors. Accordingly, the City was at liberty to contract with either CLECO or SLEMCO. We need not consider the legality and/or binding effect of the “guidelines” adopted by the City prior to the election, as the City is clearly entitled under the “guidelines” and La.R.S. 33:4341 et seq. to perfect a contract with CLECO.
For these reasons, the judgment of the trial court is reversed and set aside and judgment is rendered in favor of defendants and intervenor and against plaintiff, Southwest Louisiana Electric Membership Corporation, dismissing its suit with prejudice. Plaintiff, Southwest Louisiana Electric Membership Corporation, is cast with all costs, both at the trial level and on appeal.
REVERSED AND RENDERED.
*1323 [[Image here]]

. It can be easily determined that 5,710 votes were cast on the CLECO proposition (3387 "For" and 2323 "Against”); that 5,754 votes were cast on the SLEMCO proposition (3296 "For" and 2458 "Against”); that 7,057 qualified electors participated in all facets of the election; and, that there were 11,464 total votes on the two propositions. However, inasmuch as electors could vote either for or against each proposition or for one proposition and against the other or abstain from voting on either, it is impossible to determine the mathematical majority if the separate propositions be considered as one.